DANA ALDEN FOX, SB# 119761
    E-Mail: Dana.Fox@lewisbrisbois.com
MATTHEW P. HARRISON, SB# 222073
    E-Mail: Matthew.Harrison@lewisbrisbois.com
**LEWIS BRISBOIS BISGAARD & SMITH LLP**
221 North Figueroa Street, Suite 1200
Los Angeles, California 90012
Telephone: 213.250.1800
Facsimile: 213.250.7900

Attorneys for Defendants, County of
Orange and Michael Higgins

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| KIMBERLY J. ZION, individually and as successor in interest to CONNOR ZION,<br><br>            Plaintiff,<br><br>      vs.<br><br>COUNTY OF ORANGE, MICHAEL HIGGINS and DOES 1 through 10, inclusive,<br><br>            Defendants. | CASE NO. 8:14−cv−01134−JVS−RNB<br>Judge: Hon. James V. Selna<br><br>**NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT OR, ALTERNATIVELY, PARTIAL SUMMARY JUDGMENT**<br><br>**[Filed concurrently with [Proposed] Statement of Uncontroverted Facts and Conclusions of Law; Declarations of Matthew P. Harrison, Deputy Higgins, Curtis J. Cope, and Cmdr. Adam Powell; Application to file Under Seal; and [Proposed] Order and [Proposed] Judgment]**<br><br>DATE:       September 14, 2015<br>TIME:       1:30 p.m.<br>CRTRM:  10C<br><br>Action Filed:   July 18, 2014<br>Trial Date:     November 3. 2015 |

        PLEASE TAKE NOTICE that on September 14, 2015, at 1:30 p.m., or as soon thereafter as counsel may be heard, in Courtroom 10C of the above-captioned Court located at 411 West Fourth Street, Room 105, Santa Ana, CA 92701-4516, Defendants, the County of Orange and Michael Higgins (hereinafter, "Defendants"),

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

pursuant to Federal Rule of Civil Procedure 56, will and hereby do move this Court for summary judgment as to the operative complaint of plaintiff Kimberly Zion, individually, and as successor in interest to Connor Zion, and David DeMulle (collectively as "Plaintiff"). Alternatively, Defendants will and hereby do move for partial summary judgment as follows:

There is no triable issue of material fact as to Plaintiff's First Cause of Action — Unreasonable Force (42 U.S.C. § 1983); and no triable issue of fact as to whether Deputy Higgins' actions are entitled to qualified immunity.

There is no triable issue of material fact as to Plaintiff's Second Cause of Action —Unreasonable Seizure (42 U.S.C. § 1983); and no triable issue of material fact as to whether Deputy Higgins' actions are entitled to qualified immunity.

There is no triable issue of material fact as to Plaintiff's Third Cause of Action — Loss of Parent – Child Relationship (42 U.S.C. § 1983); and no triable issue of material fact as to whether Deputy Higgins' actions are entitled to qualified immunity.

There is no triable issue of material fact as to Plaintiff's Fourth Cause of Action —Deprivation of Life Without Due Process (42 U.S.C. § 1983); and no triable issue of material fact as to whether Deputy Higgins' actions are entitled to qualified immunity.

There is no triable issue of material fact as to Plaintiff's Fifth Cause of Action — Wrongful Death.

There is no triable issue of material fact as to Plaintiff's Sixth Cause of Action —Failure to Adequately Train Officers (42 U.S.C. §1983); and no triable issue of material fact as to whether Deputy Higgins' actions are entitled to qualified immunity.

/ / /

/ / /

/ / /

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

1   There is no triable issue of material fact as to Plaintiff's Seventh Cause of

2   Action — Failure to Adequately Screen, hire and Discipline (42 U.S.C. §1983); and

3   no triable issue of material fact as to whether Deputy Higgins' actions are entitled to

4   qualified immunity.

5   There is no triable issue of material fact as to Plaintiff's Eight Cause of

6   Action —Intentional Infliction of Emotional Distress.

7   There is no triable issue of material fact as to Plaintiff's Ninth Cause of

8   Action —Violation of Civil Code Section 52.1.

9   There is no triable issue of material fact as to Plaintiff's Tenth Cause of

10   Action — Battery.

11   There is no triable issue of material fact as to Plaintiff's claim for municipal

12   liability against the County.

13   There is no triable issue of material fact as to Plaintiff's claim for entitlement

14   to an award of punitive damages.

15   This Motion is made after counsel met and conferred in accord with Local

16   Rule 7-3, which commenced on July 9, 2015.

17   This Motion is based on this Notice, the Memorandum of Points and

18   Authorities, all exhibits, the Declarations of Matthew P. Harrison, Curtis J. Cope,

19   and Cmdr. Adam Powell, the proposed Statement of Uncontroverted Facts and

20   Conclusions of Law, the Court's file in this action, all matters of which this Court

21   must or may take judicial notice and on such further evidence and argument which

22   may be presented at the hearing on this matter.

23   DATED: August 10, 2015          LEWIS BRISBOIS BISGAARD & SMITH LLP

24

25                                   By:        /s/ Matthew P. Harrison
                                          _____
                                          Dana Alden Fox
26                                        Matthew P. Harrison
                                          Attorneys for Defendants, County of
27                                        Orange and Michael Higgins

28



LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

4833-3566-5445.1                           3                    8:14-cv-01134-JVS-RNB
MOTION FOR SUMMARY JUDGMENT OR PARTIAL SUMMARY JUDGMENT

1

# **TABLE OF CONTENTS**

2
**Page**

3
I.      INTRODUCTION ...................................................................................... 11

4
II.     UNDISPUTED FACTS ............................................................................. 11

5
III.    STANDARD FOR A MOTION FOR SUMMARY JUDGMENT ............... 13

6
IV.     THERE IS NO GENUINE, MATERIAL FACTUAL DISPUTE AS TO
7       THE FIRST CAUSE OF ACTION FOR UNREASONABLE FORCE ........ 14

        A.      Deputy Higgins Was Justified In Using Deadly Force To Protect
8               Himself, Deputy Lopez, And Members Of The Community From
                Serious Physical Harm Or Death ........................................................ 15
9
        B.      The Ninth Circuit Has Consistently Found The Use Of Deadly
10              Force To Be Reasonable Where Peace Officers Confront
                Individuals Wielding A Dangerous Object ......................................... 16
11
        C.      Deputy Higgins Was Justified In Continuing To Use Deadly
12              Force Until The Threat Had Completely Ended ................................... 17

13
V.      THERE IS NO GENUINE, MATERIAL FACTUAL DISPUTE AS TO
        THE SECOND CAUSE OF ACTION FOR UNREASONABLE
14      SEIZURE ................................................................................................. 20

15      A.      Deputy Higgins Was Authorized To Arrest The Decedent
                Because There Was Probable Cause to Believe Criminal Activity
16              Was Taking Place .............................................................................. 20

17
VI.     DEPUTY HIGGINS IS ENTITLED TO QUALIFIED IMMUNITY ........... 21

18      A.      The Objective Facts Demonstrate Deputy Higgins Acted
                Pursuant to a Good Faith, Reasonable Belief His Actions Were
19              Lawful ............................................................................................... 22

20
VII.    THERE IS NO GENUINE, MATERIAL FACTUAL DISPUTE AS TO
        THE THIRD CAUSE OF ACTION FOR LOSS OF PARENT-CHILD
21      RELATIONSHIP ...................................................................................... 23

22
VIII.   THERE IS NO GENUINE, MATERIAL FACTUAL DISPUTE AS TO
        THE FOURTH CAUSE OF ACTION FOR VIOLATION OF THE
23      FOURTEENTH AMENDMENT .................................................................. 25

24
IX.     THERE IS NO GENUINE, MATERIAL FACTUAL DISPUTE AS TO
        THE FIFTH CAUSE OF ACTION FOR WRONGFUL DEATH ................. 25
25
X.      THERE IS NO GENUINE, MATERIAL FACTUAL DISPUTE AS TO
26      THE SIXTH AND SEVENTH CAUSES OF ACTION FOR FAILURE
        TO ADEQUATELY TRAIN AND HIRE ................................................... 26

27

28

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

XI.     THERE IS NO GENUINE, MATERIAL FACTUAL DISPUTE AS TO THE EIGHTH CAUSE OF ACTION FOR INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS ..................................................27

XII.    THERE IS NO GENUINE, MATERIAL FACTUAL DISPUTE AS TO THE NINTH CAUSE OF ACTION FOR VIOLATION OF CIVIL CODE SECTION 52.1 ....................................................................28

XIII.   THERE IS NO GENUINE, MATERIAL FACTUAL DISPUTE AS TO TENTH CAUSE OF ACTION FOR BATTERY ............................................28

XIV.    THERE IS NO GENUINE, MATERIAL FACTUAL DISPUTE AS TO THE CLAIM FOR MUNICIPAL LIABILITY AGAINST THE COUNTY ............................................................................................29

         A.     There Can Be No *Monell* Liability Without An Underlying Constitutional Violation ..............................................................30

         B.     There is No Official Policy or Custom to Violate Individuals' Civil Rights ....................................................................................30

         C.     There Was Adequate Training and No Deliberate Indifference ...........30

XV.     THERE IS NO LEGITIMATE CLAIM FOR PUNITIVE DAMAGES ........31

XVI.    CONCLUSION ...........................................................................................33



LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

# TABLE OF AUTHORITIES

**Page(s)**

## FEDERAL COURT CASES

*Acri v. Varian Associates,*
 114 F.3d 999 (9th Cir. 1997)........................................................17

*Anderson v. Creighton,*
 483 U.S. 635 (1987) ...................................................................22

*Anderson v. Liberty Lobby,*
 477 U.S. 242 (1986) ...................................................................14

*Barber v. City of Santa Rosa,*
 No. C-08-5649 MMC, 2010 U.S. Dist. LEXIS 129093, 2010 WL
 5069868 (N.D. Cal. Dec. 7, 2010) ...............................................16

*Billington v. Smith,*
 292 F.3d 1177 (9th Cir. 2002)......................................................19

*Blanford v. Sacramento County,*
 406 F.3d 1110 (9th Cir. 2005)......................................................16

*Board of County Comm'rs of Bryan County v. Brown,*
 520 U.S. 397 (U.S. 1997)............................................................30

*British Airways Board v. Boeing Co.,*
 585 F.2d 946 (9th Cir. 1978)........................................................13

Brown v. Ransweiler  (2009)
 171 Cal. App. 4th 516 ................................................................26

*Bryan v. MacPherson,*
 630 F.3d 805 (9th Cir. 2010)........................................................23

*Burgess v. Pierce County,*
 918 F.2d 104 (9th Cir. 1990)........................................................21

*Carnell v. Grimm,*
 74 F.3d 977` (9th Cir. 1996)........................................................21

*Celotex Corp. v. Catrett,*
 477 U.S. 317 (1986) ...................................................................14

*Chew v. Gates,*
 27 F.3d 1432 (9th Cir. 1994)........................................................15

*Chew v. Gates,*
 27 F.3d 1432 (9th Cir. Cal. 1994) ...............................................16

*City of Canton v. Harris,*
 489 U.S. 378 (1989) ..............................................................27, 30

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

1

2                                                                                    **Page(s)**

3    *City of Canton v. Harris,*
         489 U.S. 378, 109 S.Ct. 1197 (1989) ...................................................... 30
4
     *City of Los Angeles v. Heller,*
5        475 U.S. 796 (1986) ............................................................................. 30

6    *City of St. Louis v. Praprotnik,*
         485 U.S. 112, 106 S.Ct. 915 (1988) ...................................................... 29
7
     *Cosentino v. Kurtz,*
8        2013 U.S. Dist. LEXIS 69218 (C.D. Cal. Apr. 16, 2013) ........................... 16

9    *Dasho v. City of Federal Way,*
         2015 U.S. Dist. LEXIS 79556 (W.D. Wash. June 17, 2015) ........................ 18
10
     *David v. City of Fremont,*
11       2006 U.S. Dist. LEXIS 57211, 2006 WL 2168329 (N.D. Cal. July 31,
         2006) ................................................................................................... 17
12
     *Davis v. City of Ellensburg,*
13       869 F.2d 1230 (9th Cir. 1989) ............................................................. 29

14   *Davis v. Mason County,*
         927 F.2d 1473 (9th Cir. 1991) ............................................................. 32
15
     *Dias v. Elique,*
16       436 F.3d 1125 (9th Cir. 2000) ............................................................. 22

17   *Directi Internet Solutions Pvt. Ltd. v. Dhillon,*
         2013 U.S. Dist. LEXIS 15706 (E.D. Cal. Feb. 1, 2013) ........................... 31
18
     *Elliott v. Leavitt,*
19       99 F.3d 640 (4th Cir. 1996) ................................................................. 19

20   *Forrett v. Richardson,*
         112 F.3d 416 (9th Cir. 1997) .......................................................... 15, 19
21
     *Franklin v. Fox,*
22       312 F.3d 423 (9th Cir. 2002) ............................................................... 22

23   *Garcia v. United States,*
         826 F.2d 806 (9th Cir. 1987) ............................................................... 17
24
     *Graham v. Connor,*
25       490 U.S. 386 (1989) ...................................................................... 14, 18

26   *Gregory v. County of Maui,*
         523 F.3d 1103 (9th Cir. 2008) ........................................................ 16, 17
27
     *Han v. City of Folsom,*
28       551 Fed. Appx. 923 (9th Cir. Cal. 2014) .............................................. 23

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

1

2

Page(s)

3  *Harlow v. Fitzgerald,*
      102 S. Ct. 2727 (1982) ...................................................................21

4

   Hayes v. County of San Diego  (2013)............................................25

5

   *Hayes v. County of San Diego,*

6     736 F.3d 1223 (9th Cir. 2013)......................................................24

7  Hernandez v. City of Pomona  (2009) .............................................25

8  Hughes v. Pair  (2009) ....................................................................27

9  *Karam v. City of Burbank,*
      352 F.3d 1188 (9th Cir. 2003)......................................................25

10

   *Koch v. Lockyer,*

11    340 Fed. Appx. 372 (9th Cir. Cal. 2009).....................................25

12 *Lal v. California,*
      746 F.3d 1112 (9th Cir. 2014)......................................................22

13

   *Maceachern v. City of Manhattan Beach,*

14    623 F. Supp. 2d 1092 (C.D. Cal. 2009)........................................19

15 *Maceachern v. City of Manhattan Beach,*
      623 F. Supp. 2d 1092, 1103-04 (C.D. Cal. 2009) ........................17

16

   Martinez v. County of Los Angeles  (1996) .....................................25

17

   *Mattos v. Agarano,*

18    661 F.3d 433 (9th Cir. 2011)........................................................15

19 *Maxwell v. Cnty. of San Diego,*
      697 F.3d 941 (9th Cir. 2012)........................................................15

20

   *Monell v. Department of Social Services,*

21    436 U.S. 658 (1978) ...............................................................29, 30

22 *Neely v. Feinstein,*
      50 F.3d 1502 (9th Cir. 1995)........................................................21

23

   *Nelson v. City of Davis,*

24    709 F. Supp. 2d 978 (E.D. Cal. 2010), *aff'd*, 685 F.3d 867 (9th Cir.
      2012)..............................................................................................29

25

   *Pembaur v. Cincinnati,*

26    475 U.S. 469, 106 S.Ct. 1292 (1986) ...........................................30

27 *Pham v. City of San Jose,*
      Case No.: 5:11-CV-01526-EJD, 2013 U.S. Dist. LEXIS 141844, 2013
28    WL 5443027 (N.D. Cal. Sept. 30, 2013) .......................................16

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

1

2                                                                                       **Page(s)**

3   *Plumhoff v. Rickard,*
         134 S. Ct. 2012 (2014) ........................................................................17, 19
4
    *Poppell v. City of San Diego,*
5        149 F.3d 951 (9th Cir. 1998) ........................................................................14

6   *Porter v. Osborn,*
         546 F.3d 1131 (9th Cir. 2008) ......................................................................23
7
    *Quezada v. City of Los Angeles,*
8         (2014) ...........................................................................................................28

9   *Reynolds v. Cnty. of San Diego,*
         84 F.3d 1162 (9th Cir. 1996) ........................................................................28
10
    Reynolds v. County of San Diego, 84 F.3d 1162 (9th Cir. 1996) ...........................16
11
    *Romero v. Kitsap County,*
12       931 F.2d 624 (9th Cir. 1991) ........................................................................22

13  *Saman v. Robbins,*
         173 F.3d 1150 (9th Cir. 1999) ................................................................28, 29
14
    *Saucier v. Katz,*
15       533 U.S. 194 (2001) .....................................................................................21

16  *Scott v. Harris,*
         550 U.S. 372 (2007) ...............................................................................15, 18
17
    *Sheehan v. City & Cnty. of San Francisco,*
18       743 F.3d 1211 (9th Cir. 2014) ......................................................................17

19  *Smith v. City of Hemet,*
         394 F.3d 689 (9th Cir. 2005) ........................................................................15
20
    *Smith v. Wade,*
21       461 U.S. 30 (U.S. 1983) ...............................................................................31

22  *Tatum v. City and County of San Francisco,*
         441 F.3d 1090 (9th Cir. 2006) ......................................................................20
23
    *Tennessee v. Garner,*
24       471 U.S. 1 (1985) .........................................................................................15

25  *Thompson v. City of Los Angeles,*
         885 F.2d 1439 (9th Cir. 1989) ......................................................................29
26
    *Ting v. United States,*
27       927 F.2d 1504 (9th Cir. 1991) ......................................................................15

28

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

4833-3566-5445.1                                    9                        8:14-cv-01134-JVS-RNB
                    MOTION FOR SUMMARY JUDGMENT OR PARTIAL SUMMARY JUDGMENT

**Page(s)**

*Trevino v. Gates,*
    99 F.3d 911 (9th Cir. 1996)..........................................................................29

*Venegas v. County of Los Angeles* (2004)................................................28

*Wilkinson v. Torres,*
    610 F.3d 546 (9th Cir. 2010)............................................................19, 23, 24


**STATE COURT CASES**

*Susag v. City of Lake Forest,*
    94 Cal. App. 4th 1401 (2002)......................................................................29


**FEDERAL STATUTORY AUTHORITIES**

42 U.S.C. § 1983.................................................................................2, 3, 29


**STATE STATUTORY AUTHORITIES**

Cal. Civ. Code § 52.1 ..............................................................................3, 28

Cal. Civ. Proc. Code § 377.60 ........................................................................25

Cal. Penal Code § 240...................................................................................21


**FEDERAL RULES AND REGULATIONS**

Fed. R. Civ. P. 56.......................................................................................2, 14


**STATE RULES AND REGULATIONS**

Local Rule 7-3 ...................................................................................................3



LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

## MEMORANDUM OF POINTS AND AUTHORITIES

**I.    INTRODUCTION**

On September 24, 2013, Orange County Sheriff's Deputy Michael Higgins responded to a 911 call of multiple stab wounds from an irate individual. When Deputy Higgins arrived on scene, he witnessed Deputy Lopez, who had arrived just moments earlier, being violently stabbed by the suspect. Deputy Lopez had sustained life-threatening stab wounds and was bleeding to death. The incident was captured by the Deputies' patrol vehicle video cameras, a copy of which has been included with this Motion. Acting under tense and rapidly evolving circumstances, Deputy Higgins was forced to make the split second decision to use deadly force to protect himself, his fellow deputy, and members of the residential community from great bodily harm or death from a knife-wielding suspect who had already viciously stabbed his roommate and his mother, and was in the act of inflicting grave, life-threatening stab wounds to another deputy of the Orange County Sheriff's Department.

Pursuant to long-standing, well-settled authority in both the United States Supreme Court and the Ninth Circuit, where a peace officer encounters a knife-wielding suspect threatening to inflict serious physical harm either to the peace officer or to others, the peace officer is entitled to use deadly force until the threat has completely ended.

**II.    UNDISPUTED FACTS**

In her Second Amended Complaint ("SAC"), plaintiff, Kimberly Zion, individually and as successor in interest to Connor Zion, and nominal defendant David DeMulle (hereinafter collectively referred to as "Plaintiff"), alleges that on September 24, 2013, Plaintiff's son, Connor Zion ("decedent"), was wrongfully shot and killed by Deputy Higgins of the Orange County Sheriff's Department.

On the day of the incident, prior to the Orange County Sheriff's Department arrival on scene, the decedent "went into the kitchen and grabbed a kitchen knife"

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

4833-3566-5445.1                                    11                        8:14-cv-01134-JVS-RNB
MOTION FOR SUMMARY JUDGMENT OR PARTIAL SUMMARY JUDGMENT

and "was holding the knife over his head while yelling…" [Uncontroverted Fact "UF" 2.] The decedent was "raging like Plaintiff had never seen before." [UF 3.] The decedent bit both Plaintiff and the decedent's roommate, Joe Walden ("Walden"). [UF 4.] The decedent also assaulted and battered Walden with a 12 inch long knife causing a 2 ¼ inch laceration to Walden's right bicep and a severe laceration to Walden's lower right forearm. [UF 5.] Plaintiff suffered a 1 ¼ inch laceration to her left palm near the thumb while attempting to grab a knife from the decedent. [UF 6.]

Walden and Plaintiff left the residence and a neighbor called 911. [UF 7.]

As the video of the incident taken from the patrol cars of the responding Deputies shows, the incident took place in a residential complex with two-story residences lining the street. [UF 8.]  Darlene Carpenter was walking her dog just feet from where the incident occurred. [UF 9.]  A number of people were at home at the time of the incident including, for example, Philip Kams, Melvin Herlin, and Beverly Dickson who were each in their respective residences in close enough proximity to see and hear the incident. [UF 10.]  The video even shows a person in the upstairs window of the residence in front of which the incident occurred. [UF 11.]

When Deputy Lopez of the Orange County Sheriff's Department arrived at the decedent's residence in response to a 911 call, the decedent immediately ran toward Deputy Lopez with a knife in his hand stating, "I'll kill you…you mother fucker."  [UF 12.]  The decedent ran after Deputy Lopez when Deputy Lopez exited his vehicle. [UF 13.] The decedent stabbed Deputy Lopez with a knife causing Lopez to suffer a 2 ¼ inch laceration to the right triceps muscle, an approximate 3 inch laceration to the inner left biceps muscle and an approximate 1 inch laceration to the right forearm. [UF 14.] As witness Darlene Carpenter testified, "I see Zion jump on the deputy, and I see him stabbing him or I see a stabbing motion, and he's on top of him." [See Carpenter depo., at 19:21-23, attached to the Declaration of

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

4833-3566-5445.1                                        12                    8:14-cv-01134-JVS-RNB
MOTION FOR SUMMARY JUDGMENT OR PARTIAL SUMMARY JUDGMENT

Matthew Harrison as Exhibit "3".] Witness Melvin Herlin described the decedent as "standing over, jabbing down at approximately his arm, armpit, neck area." [Herlin depo., at 16:7-8, attached to the Declaration of Matthew Harrison as Exhibit "4".]

Deputy Higgins arrived at the scene at approximately the same time as Deputy Lopez. [UF 15.] Deputy Higgins saw the decedent holding a knife over his head running full speed directly at himself and Deputy Lopez. The decedent began chasing Deputy Lopez who then fell to the ground. Deputy Higgins then saw the decedent violently raining his knife down on Deputy Lopez, stabbing Deputy Lopez. [UF 16.] Concerned for the safety of Deputy Lopez, himself, and others in the community, including the woman who was with her dog, Deputy Higgins started firing at the decedent. [UF 17.] The decedent, still in possession of the knife, began to retreat toward one of the residences as Deputy Higgins continued to fire. [UF 18.] Deputy Higgins' shots seemed to have no effect on the decedent. Deputy Higgins could not be certain whether any of the shots actually impacted the decedent. [UF 19.] The decedent finally went down near the entrance of one of the residences. [UF 20.] Deputy Higgins ran out of bullets but the decedent was still moving. [UF 21.] Deputy Higgins believed Deputy Lopez was mortally wounded and needed immediate medical assistance to save his life. [UF 22.] Deputy Higgins, therefore, attempted to render the suspect unconscious by striking the decedent in the head with his foot so that Deputy Higgins could provide aid to Deputy Lopez without the threat of the suspect continuing to attack himself, Deputy Lopez, or others in the community. [UF 23.] After the third strike, Deputy Higgins believed the decedent to be unconscious and Deputy Higgins immediately sought to render aid to the mortally wounded Deputy Lopez. [UF 24.]

## III. <u>STANDARD FOR A MOTION FOR SUMMARY JUDGMENT</u>

A party moving for summary judgment has the initial burden to establish there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *F.R.Civ.P.*, Rule 56(c); *British Airways Board v.*

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

1  *Boeing Co.*, 585 F.2d 946, 951 (9th Cir. 1978). The moving party is not required to

2  disprove matters upon which the non- moving party will have the burden of proof at

3  trial; indeed, the moving party need not produce any evidence at all on those issues.

4  *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). The moving party's burden is met

5  simply by "'showing' – that is, pointing out to the District Court – that there is an

6  absence of evidence to support the non-moving party's case." *Id.* at 325.

7       The opposing party's burden is to show a triable issue of fact as to matters

8  upon which he will bear the burden of proof at trial. "A complete failure of proof

9  concerning an essential element of the non-moving party's case necessarily renders

10 all other facts immaterial." *Celotex*, 477 U.S. at 323. Summary judgment requires

11 facts, not simply unsupported denials or rank speculation. *Poppell v. City of San*

12 *Diego* 149 F.3d 951, 954 (9th Cir. 1998). "Where the nonmoving party will bear the

13 burden of proof at trial on a dispositive issue, Rule 56(e) requires the nonmoving

14 party to go beyond the pleadings and by her own affidavits, or by the 'depositions,

15 answers to interrogatories and admissions on file,' designate 'specific facts showing

16 that there is a genuine issue for trial.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-

17 324 (1986). The mere existence of a scintilla of evidence does not satisfy this

18 standard; rather, the plaintiff can meet it only with such admissible evidence that a

19 reasonable trier of fact could return a verdict in his or her favor. *Anderson v. Liberty*

20 *Lobby*, 477 U.S. 242, 252 (1986).

21 **IV.   THERE IS NO GENUINE, MATERIAL FACTUAL DISPUTE AS TO**

22       **THE FIRST CAUSE OF ACTION FOR UNREASONABLE FORCE**

23       Excessive force claims under the Fourth Amendment must be analyzed under

24 the "objective reasonableness" standard, i.e., "whether the officers' actions are

25 'objectively reasonable' in light of the facts and circumstances confronting them,

26 without regard to their underlying intent or motivation." *Graham v. Connor*, 490

27 U.S. 386, 397 (1989). "Graham sets out a non-exhaustive list of factors for

28 evaluating [on-the-scene] reasonableness: (1) the severity of the crime at issue, (2)

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

4833-3566-5445.1                                    14                        8:14-cv-01134-JVS-RNB
                              MOTION FOR SUMMARY JUDGMENT OR PARTIAL SUMMARY JUDGMENT

1   whether the suspect posed an immediate threat to the safety of the officers or others,

2   and (3) whether the suspect actively resisted arrest or attempted to escape." *Maxwell*

3   *v. Cnty. of San Diego*, 697 F.3d 941, 951 (9th Cir. 2012).

4       A.   **Deputy Higgins Was Justified In Using Deadly Force To Protect**

5            **Himself, Deputy Lopez, And Members Of The Community From**

6            **Serious Physical Harm Or Death**

7       It is well established that deadly force is constitutionally reasonable "if the

8   suspect threatens the officer with a weapon" or "where the officer has probable

9   cause to believe that the suspect poses a threat of serious physical harm, either to the

10  officer or others." *Ting v. United States*, 927 F.2d 1504, 1510 (9th Cir. 1991);

11  *Tennessee v. Garner*, 471 U.S. 1, 11-12 (1985). "Ultimately, the 'most important'

12  Graham factor is whether the suspect posed an 'immediate threat to the safety of the

13  officers or others.'" *Mattos v. Agarano*, 661 F.3d 433, 441 (9th Cir. 2011); *Chew v.*

14  *Gates*, 27 F.3d 1432, 1441 (9th Cir. 1994).

15      Law enforcement officers may use deadly force to stop a suspect who poses

16  "an actual and imminent threat to the lives of any pedestrians who might [be]

17  present, to other civilian motorists, and to the officers involved…" *Scott v. Harris*,

18  550 U.S. 372, 384 (2007). "[W]here a suspect threatens an officer with a weapon

19  such as a gun or a knife, the officer is justified in using deadly force." *Smith v. City*

20  *of Hemet*, 394 F.3d 689, 704 (9th Cir. 2005). Officers may use deadly force to

21  prevent the escape of a felony suspect "when it is necessary to prevent the escape

22  and the officer has probable cause to believe that the suspect poses a threat of

23  serious harm, either to the officer or others." *Forrett v. Richardson*, 112 F.3d 416,

24  420 (9th Cir. 1997).

25      Here, the undisputed facts show Deputy Higgins had every reason to believe

26  the decedent posed an imminent threat of death or serious physical injury not only to

27  himself and Deputy Lopez, but to others in the residential neighborhood. The

28  decedent had already maimed his roommate and mother with a knife and was in the

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

4833-3566-5445.1                    15                    8:14-cv-01134-JVS-RNB
MOTION FOR SUMMARY JUDGMENT OR PARTIAL SUMMARY JUDGMENT

1   act of mortally maiming Deputy Lopez with a knife.  The decedent was fleeing into

2   a residence still carrying the knife. As Defendants' police practices expert, Curtis J.

3   Cope, declared, "any reasonable officer would have concluded the knife attack on

4   Lopez by [the decedent] was a situation that required a deadly force response in

5   order to defend Lopez from great bodily injury or death."  [See Cope Declaration, p.

6   9, ¶ 10b, attached the Harrison Decl. as Exhibit "7".] Both the United States

7   Supreme Court and the Ninth Circuit have held that officers are authorized in using

8   deadly force under the extreme circumstances Deputy Higgins encountered.

9   **B.**   **The Ninth Circuit Has Consistently Found The Use Of Deadly**

10   **Force To Be Reasonable Where Peace Officers Confront**

11   **Individuals Wielding A Dangerous Object**

12   A knife is unquestionably a dangerous, lethal object. *See, Chew v. Gates*, 27

13   F.3d 1432, 1454 (9th Cir. Cal. 1994) (describing a knife as an "obviously lethal"

14   instrument); *Gregory v. County of Maui*, 523 F.3d 1103, 1107 (9th Cir. 2008) (even

15   "a properly wielded writing instrument may inflict lethal force"). Indeed, in this case

16   the decedent used a knife to inflict mortal wounds on both his roommate and Deputy

17   Lopez.

18   The Ninth Circuit has routinely found it reasonable for offices to use deadly

19   force in the face of knife-wielding suspects. *See, e.g, Blanford v. Sacramento*

20   *County*, 406 F.3d 1110 (9th Cir. 2005) (suspect carrying a 2-1/2-foot-long sword

21   walking toward a residence); *Cosentino v. Kurtz*, 2013 U.S. Dist. LEXIS 69218

22   (C.D. Cal. Apr. 16, 2013) (suspect wielding an axe); *Reynolds v. County of San*

23   *Diego*, 84 F.3d 1162, 1168-70 (9th Cir. 1996) (overruled on other grounds) (suspect

24   picked up a knife and swung it at the deputy); *Pham v. City of San Jose*, Case No.:

25   5:11-CV-01526-EJD, 2013 U.S. Dist. LEXIS 141844, 2013 WL 5443027 (N.D. Cal.

26   Sept. 30, 2013) (decedent had a knife and charged the officer); *Barber v. City of*

27   *Santa Rosa*, No. C-08-5649 MMC, 2010 U.S. Dist. LEXIS 129093, 2010 WL

28   5069868, at *1-2, *6 (N.D. Cal. Dec. 7, 2010) (decedent armed with a butcher knife

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

4833-3566-5445.1                                    16                        8:14-cv-01134-JVS-RNB
MOTION FOR SUMMARY JUDGMENT OR PARTIAL SUMMARY JUDGMENT

1  and advanced toward the officer while making verbal threats); *MacEachern v. City*

2  *of Manhattan Beach*, 623 F. Supp. 2d 1092, 1095-96, 1103-04 (C.D. Cal. 2009)

3  (decedent armed with a knife and jabbed it at the officer); *Garcia v. United States*,

4  826 F.2d 806, 812 (9th Cir. 1987) (decedent attacked a border patrol agent with a

5  rock and stick); *David v. City of Fremont*, 2006 U.S. Dist. LEXIS 57211, 2006 WL

6  2168329 (N.D. Cal. July 31, 2006) (suspect made stabbing motions with a knife

7  toward the deputy); *Acri v. Varian Assocs.*, 114 F.3d 999 (9th Cir. 1997) (suspect

8  grabbed a knife when officer approached); *Sheehan v. City & Cnty. of San*

9  *Francisco*, 743 F.3d 1211, 1229 (9th Cir. 2014) (suspect threatened to kill the

10  officer while wielding a knife); *Gregory v. County of Maui*, 523 F.3d 1103 (9th Cir.

11  2008) (suspect pointed a pen at officers).

12      **C.    Deputy Higgins Was Justified In Continuing To Use Deadly Force**

13           **Until The Threat Had Completely Ended**

14      Even after Deputy Higgins had fully unloaded his firearm, the decedent was

15  still moving, still armed with the knife, and immediately in front of the entrance to

16  one of the residences. The three strikes Deputy Higgins made to the decedent's head

17  after Deputy Higgins ran out of bullets were fully justified to end the decedent's

18  threat to the deputies and the community and to permit Deputy Higgins to render life

19  saving aid to Deputy Lopez.

20      As the United States Supreme Court recently held, "if police officers are

21  justified in firing at a suspect in order to end a severe threat to public safety, the

22  officers need not stop shooting until the threat has ended." *Plumhoff v. Rickard*, 134

23  S. Ct. 2012, 2016 (2014) (emphasis added).

24      In this instance, Deputy Higgins ran out of bullets before the threat had ended.

25  The decedent was still moving at that point, and was still armed with the knife

26  which the decedent had used, just seconds earlier, to inflict serious injury to Deputy

27  Lopez. [UF 21.] Deputy Higgins could not have known if any of his shots actually

28  hit the decedent, or if they hit the decedent in locations that would fully incapacitate

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

4833-3566-5445.1                                    17                        8:14-cv-01134-JVS-RNB
                              MOTION FOR SUMMARY JUDGMENT OR PARTIAL SUMMARY JUDGMENT

1  him. Indeed, Deputy Higgins' fired several shots at the decedent before the decedent

2  even went down. [UF 19.]

3         Deputy Higgins, consequently, found himself in a precarious situation. The

4  decedent was armed and posed a threat of serious physical injury to the Deputies

5  and to the residents in the neighborhood. Deputy Higgins was forced to decide in a

6  matter of mere seconds whether to leave the still dangerous, armed decedent in order

7  to render live-saving aid to the mortally wounded Deputy Lopez; or to fully

8  incapacitate the decedent before seeking to aid Deputy Lopez.  As the Supreme

9  Court has stated, "police officers are often forced to make split-second judgments —

10  in circumstances that are tense, uncertain and rapidly evolving..."  *Graham v.*

11  *Connor*, 490 U.S. 386, 396-397.

12         Deputy Higgins did not know how many people were in the residence to

13  which the decedent appeared to be retreating with the knife in hand.  *See, Dasho v.*

14  *City of Fed. Way*, 2015 U.S. Dist. LEXIS 79556 (W.D. Wash. June 17, 2015) ("He

15  also could have retreated to another part of the apartment and attacked someone

16  else—the Officers did not know whether anyone else was in another part of the

17  apartment . . . a reasonable officer could have concluded that Mr. Dasho posed an

18  immediate threat to the safety of those in the apartment even if he turned or changed

19  directions.")   Deputy Lopez was still on scene, as was Darlene Carpenter, the

20  woman who was walking her dog when the Deputies arrived.

21         Deputy Higgins could have left the decedent, who was still moving and armed

22  with a knife, but Deputy Higgins "need not have taken that chance and hoped for the

23  best." *Scott v. Harris*, 550 U.S. 372, 385 (2007). Deputy Higgins had to ensure the

24  threat was completely neutralized before leaving the decedent to render life-saving

25  aid to Deputy Lopez. With his firearm fully discharged, Deputy Higgins' use of his

26  foot on the decedent's head was tantamount to his continued shooting to accomplish

27  his duty of fully neutralizing the threat by rendering the descendent unconscious. As

28  / / /

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

the Supreme Court has held, "officers need not stop shooting until the threat has ended." *Plumhoff v. Rickard*, 134 S. Ct. 2012, 2016 (2014).

Police practices expert Curtis J. Cope likewise declared Deputy Higgins conduct reasonable: "[T]he use of kicks to render [the decedent] unconscious was appropriate for the circumstances . . . any reasonable officer would have concluded [the decedent] would have continued his knifing rampage if allowed to flee . . . law enforcement is typically trained to avoid head strikes unless the strikes are necessary in a life and death situation . . . the circumstances of this event clearly was a life and death situation." [Cope Declaration, p. 11, ¶ 10d, attached the Harrison Decl. as Exhibit "7".]

"[T]he Fourth amendment does not require omniscience … Officers need not be absolutely sure … of the nature of the threat or the suspect's intent to cause them harm – the Constitution does not require that certitude precede the act of self protection." In *Elliott v. Leavitt*, 99 F.3d 640, 644 (4th Cir. 1996). As stated by the Supreme Court, "if an officer reasonably, but mistakenly, believed that a suspect was likely to fight back, for instance, the officer would be justified in using more force than in fact was needed." *Saucier*, 533 U.S. at 205.

Any argument that Deputy Higgins could have used other means to incapacitate the decedent is unavailing. Police officers "need not avail themselves of the least intrusive means of responding." *Billington v. Smith*, 292 F.3d 1177, 1188-89 (9th Cir. 2002). Even if Deputy Higgins "may have had less deadly force available to him . . . , his failure to use such force does not rise to the level of a Fourth Amendment violation where he was confronted with an armed suspect and required to make a quick decision regarding how to react." *Maceachern v. City of Manhattan Beach*, 623 F. Supp. 2d 1092, 1103 (C.D. Cal. 2009); *see also Forrett v. Richardson*, 112 F.3d 416, 420 (9th Cir. 1997) ("The Fourth Amendment does not require law enforcement officers to exhaust every alternative before using justifiable deadly force."); *Wilkinson v. Torres*, 610 F.3d 546, 551 (9th Cir. 2010) ("A

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

1  reasonable use of deadly force encompasses a range of conduct, and the availability

2  of a less-intrusive alternative will not render conduct unreasonable.")

3       Deputy Higgins was forced to make a split-second decision in rapidly

4  evolving, tense, life-threatening circumstances. The Supreme Court has held a peace

5  officer is entitled to continue shooting until the threat has ended. It stands to reason,

6  therefore, that when Deputy Higgins ran out of bullets, he was entitled to continue to

7  use an even lesser level of force (his foot) to completely neutralize the deadly threat

8  to render life-saving aid to the mortally wounded Deputy Lopez and to protect the

9  other members of the community in the immediate vicinity.

10  **V.**    **THERE IS NO GENUINE, MATERIAL FACTUAL DISPUTE AS TO**

11       **THE SECOND CAUSE OF ACTION FOR UNREASONABLE**

12       **SEIZURE**

13       **A.**    **Deputy Higgins Was Authorized To Arrest The Decedent Because**

14           **There Was Probable Cause to Believe Criminal Activity Was**

15           **Taking Place**

16       Pursuant to Ninth Circuit Model Instruction 9.20, "a seizure of a person by

17  arrest without warrant is reasonable if the arresting officer had probable cause to

18  believe the plaintiff had committed or was committing a crime."

19       Probable cause exist when "under all of the circumstances known to the

20  officer at the time, an objectively reasonable police officer would conclude there is a

21  fair probability that the plaintiff had committed or was committing a crime." (Model

22  Instruction 9.20; *Tatum v. City and County of San Francisco,* 441 F.3d 1090, 1094

23  (9th Cir. 2006).)

24       Here, the 911 call reported a physical attack on Plaintiff and Walden. Upon

25  Deputy Higgins' arrival at the scene, he witnessed the decedent attacking Deputy

26  Lopez with a knife.

27  / / /

28  / / /

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

4833-3566-5445.1               20              8:14-cv-01134-JVS-RNB
MOTION FOR SUMMARY JUDGMENT OR PARTIAL SUMMARY JUDGMENT

1    Assault and battery are crimes under California law. (See Penal Code § 240

2    and 242.)  Any objectively reasonable police officer under the circumstances would

3    have concluded there was a fair probability a crime was being committed.

4    **VI.    DEPUTY HIGGINS IS ENTITLED TO QUALIFIED IMMUNITY**

5        Qualified immunity is a judicially-crafted protection for public officials who

6    must exercise judgment in their official duties. "It is an 'immunity from suit rather

7    than a mere defense to liability.'" *Saucier v. Katz*, 533 U.S. 194, 200-01 (2001)

8    (citation omitted). "Under the doctrine of qualified immunity, police officers

9    'performing discretionary functions generally are shielded from liability for civil

10   damages insofar as their conduct does not violate clearly established statutory or

11   constitutional rights of which a reasonable [police officer] would have known.'

12   *Harlow v. Fitzgerald*, 102 S. Ct. 2727, 2738 (1982).

13       To determine whether qualified immunity applies, the courts apply a two part

14   test.  First, the plaintiff bears the initial burden of proving the officer violated rights

15   clearly established under the Fourth or Fourteenth Amendment.  *Saucier,* 533 U.S.

16   201; *Thompson v.*

17    *Souza*, 111 F.3d 694 (9th Cir. 1997); *Neely v. Feinstein*, 50 F.3d 1502, 1506

18   (9th Cir. 1995).  If the law was not clearly established at the time the acts occurred,

19   the official is entitled to qualified immunity since "an official [can] not reasonably

20   be expected to anticipate subsequent legal developments, nor could he fairly be said

21   to know that the law forbade conduct not previously identified as unlawful."

22   *Thompson*, 111 F.3d at 698; *Harlow*, 457 U.S. at 818.

23       If the conduct violated a clearly established constitutional right, the second

24   question asked is under the law, could a reasonable officer have believed the

25   conduct was lawful.  *Saucier*, 533 U.S. at 202; *Carnell v. Grimm*, 74 F.3d 977, 978

26   (9th Cir. 1996). Challenged conduct violates clearly established rights only if the

27   unlawfulness   of   the   conduct   was   apparent   in   light   of   preexisting

28   law.[Citation.]."*Burgess v. Pierce County* 918 F.2d 104, 105 (9th Cir. 1990).

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

An officer will be entitled to qualified immunity even if he violates a plaintiff's constitutional rights if his actions are deemed reasonable in light of the information available to him at the time. *See Dias v. Elique*, 436 F.3d 1125 (9th Cir. 2000); see also *Franklin v. Fox*, 312 F.3d 423, 437-38 (9th Cir. 2002) ("If the right was clearly established, we must determine whether the official's actions were the result of a reasonable mistake of fact or law."). Thus, under a qualified immunity analysis, it is irrelevant whether a defendant actually violated the constitution. The only question is whether the defendant could have reasonably believed his or her actions to be constitutional. *See Romero v. Kitsap County*, 931 F.2d 624, 627 (9th Cir. 1991) ("Therefore, regardless of whether the constitutional violation occurred, the officer should prevail if . . . [he] could have reasonably believed that his particular conduct was lawful.")

## A.   The Objective Facts Demonstrate Deputy Higgins Acted Pursuant to a Good Faith, Reasonable Belief His Actions Were Lawful

Deputy Higgins did not violate a clearly established right under the Fourth Amendment. Conduct violates clearly established law when, at the time of the challenged conduct, "[t]he contours of [a] right [are] sufficiently clear" that every "reasonable official would have understood that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987).

Deputy Higgins had every reason to believe the decedent posed a very serious threat to himself, Deputy Lopez, and members of the community. Deputy Higgins reasonably believed the appropriate course of conduct was to immediately seek to incapacitate the decedent to eliminate the continued threat of great bodily harm or death. This was undoubtedly a tense, uncertain, and rapidly evolving situation in which Deputy Higgins was forced to make split-second judgments. Deputy Higgins' actions must be judged from this on-scene perspective, not with the benefit of 20/20 hindsight.

In *Lal v. Cal.*, 746 F.3d 1112 (9th Cir. 2014), a man led officers on a 45

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

1  minute chase after a domestic disturbance and ultimately advanced on the officers

2  with a large rock over his head, resulting in the use of deadly force by the officers.

3  The Ninth Circuit affirmed summary judgment based on qualified immunity:

4  "Under the totality of the circumstances, the district court's determinations that the

5  officers objectively feared immediate serious physical harm and that a reasonable

6  officer could have believed that Lal threatened him with immediate serious danger

7  are sound." *Id*. at 1119.

8      In *Han v. City of Folsom*, 551 Fed. Appx. 923 (9th Cir. Cal. 2014), the Ninth

9  Circuit affirmed summary judgment based on qualified immunity where officers

10  fatally shot a man who was approaching the officers with a three-to-four-inch

11  camping knife: "Where, as here, 'an officer's use of force was premised on a

12  *reasonable* belief that such force was lawful, the officer will be granted immunity

13  from suit, notwithstanding the fact excessive force was deployed.'" *Id*. at 926, citing

14  *Bryan v. MacPherson*, 630 F.3d 805, 832 (9th Cir. 2010).

15      The same analysis applies here. Deputy Higgins' use of force was premised

16  on the reasonable belief such force was lawful and necessary to prevent great bodily

17  harm or death to himself, Deputy Lopez, and members of the community.

## VII. THERE IS NO GENUINE, MATERIAL FACTUAL DISPUTE AS TO THE THIRD CAUSE OF ACTION FOR LOSS OF PARENT-CHILD RELATIONSHIP

21      The Ninth Circuit recognizes parents have a Fourteenth Amendment liberty

22  interest in the companionship and society of their children. But such a claim requires

23  the plaintiffs to prove the officers' use of force "shock[ed] the conscience." *Porter v.*

24  *Osborn*, 546 F.3d 1131, 1137 (9th Cir. 2008).

25      The standard courts apply to determine if conduct shocks the conscience

26  depends on whether actual deliberation by the officer was practical or whether the

27  officer was forced to make a snap judgment.  As the court in *Wilkinson v. Torres*,

28  610 F.3d 546, 554 (9th Cir. 2010) explained:

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

1   Official conduct that "shocks the conscience" in depriving parents of
2   that interest is cognizable as a violation of due process. [citation] In
3   determining whether excessive force shocks the conscience, the court
4   must first ask "whether the circumstances are such that actual
5   deliberation [by the officer] is practical." [citation] Where actual
6   deliberation is practical, then an officer's "deliberate indifference" may
7   suffice to shock the conscience. On the other hand, where a law
8   enforcement officer makes a snap judgment because of an escalating
9   situation, his conduct may only be found to shock the conscience if he
10  acts with a purpose to harm unrelated to legitimate law enforcement
11  objectives. For example, a purpose to harm might be found where an
12  officer uses force to bully a suspect or "get even."

13  Here, Deputy Higgins was forced to make a snap judgment. Mere seconds
14  passed between Higgins' arrival and the need to use force. *See Wilkinson v. Torres*,
15  610 F.3d 546, 554 (9th Cir. 2010) ("[T]he purpose-to-harm standard is clearly
16  appropriate. Within a matter of seconds, the situation evolved from a car chase to a
17  situation involving an accelerating vehicle in dangerously close proximity to officers
18  on foot."); *Hayes v. County of San Diego,* 736 F.3d 1223, 1230 (9th Cir. 2013)
19  ("The decision to use deadly force against Hayes was a snap judgment based on the
20  unexpected appearance of a knife in his hand.")

21  Accordingly, Plaintiff must establish Deputy Higgins acted with a purpose to
22  harm unrelated to legitimate law enforcement objectives. The facts, however, show
23  entirely the opposite. The sequence of events supports Deputy Higgins' justified
24  effort to defend himself, Deputy Lopez, and members of the community from what
25  he reasonably believed was a threat of imminent bodily injury or death. There is no
26  competent evidence indicating Deputy Higgins had any ulterior motives for using
27  force against the decedent. Plaintiff must provide evidence of an alleged purpose to
28  harm; she cannot rely on mere speculation as to Deputy Higgins' motive. *See Karam*

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

4833-3566-5445.1                          24                      8:14-cv-01134-JVS-RNB
MOTION FOR SUMMARY JUDGMENT OR PARTIAL SUMMARY JUDGMENT

1  *v. City of Burbank*, 352 F.3d 1188, 1194 (9th Cir. 2003) (explaining that

2  "speculation as to . . . improper motive does not rise to the level of evidence

3  sufficient to survive summary judgment").  No such evidence exists.

4  VIII.  **THERE IS NO GENUINE, MATERIAL FACTUAL DISPUTE AS TO**

5  **THE FOURTH CAUSE OF ACTION FOR VIOLATION OF THE**

6  **FOURTEENTH AMENDMENT**

7  Substantive due process claims based on excessive force must be analyzed

8  under the Fourth Amendment objective reasonableness standard. *Koch v. Lockyer*,

9  340 Fed. Appx. 372, 375 (9th Cir. Cal. 2009).  As demonstrated above, under the

10  totality of the circumstances, Deputy Higgins did not act unreasonably.

11  IX.  **THERE IS NO GENUINE, MATERIAL FACTUAL DISPUTE AS TO**

12  **THE FIFTH CAUSE OF ACTION FOR WRONGFUL DEATH**

13  *Code of Civil Procedure* § 377.60 (wrongful death) permits "a cause of action

14  for the death of a person caused by the wrongful act or neglect of another. . ."

15  Pursuant to CACI No. 401, "[a] person is negligent if he or she does something that

16  a reasonably careful person would not do in the same situation..."

17  "The reasonableness of an officer's conduct is determined in light of the

18  totality of circumstances." *Hayes v. County of San Diego* (2013) 57 Cal. 4th 622,

19  629.  As the California Supreme Court held in *Hernandez v. City of Pomona* (2009)

20  46 Cal. 4th 501, 513, the reasonableness standard is the same as the federal

21  reasonableness standard. ("California's civil jury instructions specifically direct the

22  jury, in determining whether police officers used unreasonable force for purposes of

23  tort liability, to consider the same factors that the high court has identified and that

24  the federal court's instructions in this case set forth.")

25  Under California law, police officers are not subject to civil liability for the

26  use of lethal force where "the circumstances reasonably created a fear of death or

27  serious bodily harm to the officer or to another." *Martinez v. County of Los Angeles*

28  (1996) 47 Cal. App. 4th 334, 349.

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

4833-3566-5445.1                                    25                        8:14-cv-01134-JVS-RNB
MOTION FOR SUMMARY JUDGMENT OR PARTIAL SUMMARY JUDGMENT

1    Like federal courts, California cases hold that the relevant inquiry is whether

2  the actual actions meet this standard, not whether another course of action could be

3  suggested in hindsight.

4         The law has never been applied to suggest that there is only one

5         reasonable action that an officer may take under a given set of

6         circumstances. There will virtually always be a range of conduct that is

7         reasonable. As long as an officer's conduct falls within the *range* of

8         conduct that is reasonable under the circumstances, there is no

9         requirement that he or she choose the "most reasonable" action or the

10        conduct that is the least likely to cause harm and at the same time the

11        most likely to result in the successful apprehension of a violent suspect,

12        in order to avoid liability for negligence. It would be unreasonable to

13        require police officers in the field to engage in the sort of complex

14        calculus that would be necessary to determine the "best" or most

15        effective and least dangerous method of handling an immediate and

16        dangerous situation, particularly when officers are forced to make split-

17        second decisions under tense and often perilous conditions.

18  *Brown v. Ransweiler* (2009) 171 Cal. App. 4th 516, 537-538, italics in original.

19       As discussed herein, under the totality of the circumstances, Deputy Higgins

20  reasonably believed there was a threat of imminent great bodily injury or death from

21  the decedent's violent actions.  Deputy Higgins was "forced to make [a] split-second

22  decision[] under tense and [] perilous conditions." *Brown, supra*, 171 Cal. App. 4th

23  538.

24  **X.**  **THERE IS NO GENUINE, MATERIAL FACTUAL DISPUTE AS TO**

25        **THE SIXTH AND SEVENTH CAUSES OF ACTION FOR FAILURE**

26        **TO ADEQUATELY TRAIN AND HIRE**

27       Liability for alleged failure to properly train will only attach when the

28  inadequate training can be characterized as the result of "deliberate indifference."

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

1   *City of Canton v. Harris*, 489 U.S. 378, 388 (1989). "'Municipal liability under

2   1983 attaches where - and only where - a deliberate choice to follow a course of

3   action is made from among various alternatives' by city policymakers." *Id*. at  389.

4   Only where a failure to train reflects a "deliberate" or "conscious" choice by a

5   municipality- a "policy" as defined by our cases - can a city be liable for such a

6   failure under 1983." *Id*.

7       Here, the County at all times selected and retained its law enforcement

8   personnel, including Deputy Higgins, in accordance with all appropriate

9   requirements and directives. Furthermore, the County's policies are appropriate and

10   constitutionally sound and Plaintiffs cannot identify any evidence to the contrary.

11   [UF 25-28.]

12   **XI.**   **THERE IS NO GENUINE, MATERIAL FACTUAL DISPUTE AS TO**

13         **THE EIGHTH CAUSE OF ACTION FOR INTENTIONAL**

14         **INFLICTION OF EMOTIONAL DISTRESS**

15       Intentional infliction of emotional distress requires outrageous conduct. (See

16   CACI No. 1602.) A defendant's conduct is "outrageous" when it is so "extreme as

17   to exceed all bounds of that usually tolerated in a civilized community." *Hughes v.*

18   *Pair* (2009) 46 Cal.4th 1035, 1050—1051.

19       As demonstrated herein, Deputy Higgins had very good reason to be

20   concerned about his own safety, and the safety of others, and was therefore entitled

21   to use the level of force employed. It was not outrageous conduct under the

22   circumstances.

23   / / /

24   / / /

25   / / /

26   / / /

27   / / /

28   / / /

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

4833-3566-5445.1       27       8:14-cv-01134-JVS-RNB
MOTION FOR SUMMARY JUDGMENT OR PARTIAL SUMMARY JUDGMENT

## XII. THERE IS NO GENUINE, MATERIAL FACTUAL DISPUTE AS TO THE NINTH CAUSE OF ACTION FOR VIOLATION OF CIVIL CODE SECTION 52.1

Civil Code §52.1, sometime referred to as the "Bane Act," provides for liability only when "exercise or enjoyment of rights secured by the Constitution or laws of the United States, or of rights secured by the Constitution or laws of this state, has been interfered with . . ."

"Civil Code section 52.1 does not extend to all ordinary tort actions because its provisions are limited to threats, intimidation, or coercion that interferes with a constitutional or statutory right." *Venegas v. County of Los Angeles* (2004) 32 Cal. 4th 820, 843. *See also, Quezada v. City of Los Angeles* (2014) 222 Cal. App. 4th 993, 1007-1008 ("A defendant is liable if he or she interfered with or attempted to interfere with the plaintiff's constitutional rights by the requisite threats, intimidation, or coercion.").

As discussed herein, Deputy Higgins did not violate any constitutional right of the decedent. Accordingly, there can be no Bane Act violation. *See, Reynolds v. Cnty. of San Diego*, 84 F.3d 1162, 1170-71 (9th Cir. 1996) ("[B]ecause there is no federal constitutional violation and no conduct specified which constitutes a state constitutional violation, there is no conduct upon which to base a claim for liability under [California Civil Code Section 52.1]).")

## XIII. THERE IS NO GENUINE, MATERIAL FACTUAL DISPUTE AS TO TENTH CAUSE OF ACTION FOR BATTERY

An essential element of a claim for battery by a peace officer is "that defendant used unreasonable force." *See* CACI No. 1305; *see also Saman v. Robbins*, 173 F.3d 1150, 1157 n.6 (9th Cir. 1999) ("A prima facie case for battery is not established under California law unless the plaintiff proves that an officer used unreasonable force against him to make a lawful arrest or detention.").

Defendants incorporate here their analysis of the excessive force claim based

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

4833-3566-5445.1                28                8:14-cv-01134-JVS-RNB
MOTION FOR SUMMARY JUDGMENT OR PARTIAL SUMMARY JUDGMENT

on the Fourth Amendment, and respectfully request the Court apply the same analysis to the battery claim. *See Nelson v. City of Davis*, 709 F. Supp. 2d 978, 992 (E.D. Cal. 2010), *aff'd*, 685 F.3d 867 (9th Cir. 2012) ("the same standards apply to both state law assault and battery and Section 1983 claims premised on constitutionally prohibited excessive force"); *see also Susag v. City of Lake Forest,* 94 Cal. App. 4th 1401, 1412-13 (2002) ("it appears unsound to distinguish between section 1983 and state law claims arising from the same alleged misconduct"); *Saman v. Robbins*, 173 F.3d 1150, 1156-57 (9th Cir. 1999) (treating Section 1983 and state law battery claim as synonymous).

## XIV. <u>THERE IS NO GENUINE, MATERIAL FACTUAL DISPUTE AS TO THE CLAIM FOR MUNICIPAL LIABILITY AGAINST THE COUNTY</u>

A local government unit such as a county or city cannot be liable for damages pursuant to 42 U.S.C. § 1983 based upon a respondeat superior theory. *Monell v. Department of Social Services*, 436 U.S. 658 (1978). Instead, a plaintiff has the burden of proving the underlying civil rights violation was caused by an official policy or custom of the public entity. This means the damages suffered resulted from a "permanent and well-settled" municipal practice. *City of St. Louis v. Praprotnik*, 485 U.S. 112, 106 S.Ct. 915 (1988) (plurality opinion). *See also Davis v. City of Ellensburg*, 869 F.2d 1230, 1234 (9th Cir. 1989) ("Municipalities cannot be held liable simply because they employ a tortfeasor.").

In addition, an official custom or policy cannot be established by random acts or isolated events. *Thompson v. City of Los Angeles*, 885 F.2d 1439, 1443-44 (9th Cir. 1989).

Finally, after making a showing of an unconstitutional official policy, a plaintiff then must prove the policy or custom was both the cause in fact and the legal cause of the deprivation. *Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996).

/ / /

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

4833-3566-5445.1                                   29                    8:14-cv-01134-JVS-RNB
MOTION FOR SUMMARY JUDGMENT OR PARTIAL SUMMARY JUDGMENT

A.   **There Can Be No *Monell* Liability Without An Underlying Constitional Violation**

A claim under *Monell* for an official custom or policy that is unconstitutional cannot be established if the plaintiff suffered no infringement of his constitutional rights. *City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986).  As set forth above, the decedent's constitutional rights were not violated. Thus, there can be no *Monell* liability.

B.   **There is No Official Policy or Custom to Violate Individuals' Civil Rights**

The policies of the County prohibit arrests without legal justification and excessive use of force. [UF 25-28.] Plaintiff cannot meet her burden to show the County had any such contrary policies.

C.   **There Was Adequate Training and No Deliberate Indifference**

As to any allegation of constitutional violations resulting from a failure to properly train its employees, liability will only attach when the inadequate training can be characterized as the result of "deliberate indifference."  *City of Canton v. Harris*, 489 U.S. 378, 388, 109 S.Ct. 1197 (1989). "'Municipal liability under 1983 attaches where - and only where - a deliberate choice to follow a course of action is made from among various alternatives' by city policymakers." *City of Canton*, 489 U.S. at 389 (quoting *Pembaur v. Cincinnati*, 475 U.S. 469, 483-484, 106 S.Ct. 1292 (1986)).  Only where a failure to train reflects a "deliberate" or "conscious" choice by a municipality- a "policy" as defined by our cases - can a city be liable for such a failure under 1983." *City of Canton*, *supra*, U.S. at 389.

"Deliberate indifference is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Board of County Comm'rs of Bryan County v. Brown*, 520 U.S. 397, 410 (U.S. 1997).

Here, Plaintiff cannot identify any unconstitutional County policy and cannot identify a single unconstitutional act or omission done pursuant to any County

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

policy. The policies and practices of the County do not permit or condone the violation of constitutional or other protected rights of persons.  Specifically, the Department's policies and practices do not permit or condone arrests without legal justification, nor do they permit or condone the use of excessive force. [UF 25-28.]

The County has at all times relevant to this case selected and retained its law enforcement personnel in accordance with all state-mandated requirements and directives. Before a deputy is hired, he or she is tested and interviewed, and a thorough background check is conducted. Each applicant must successfully complete a P.O.S.T.-approved academy or hold the necessary P.O.S.T. certificates for training previously received. [UF 28.]

Upon being hired as a deputy, the new employee must successfully complete an extensive in-field training program in which experienced deputies take the new employee through selected phases of police work and evaluate his or her progress and competence.   Deputies employed by the County are required to maintain proficiency levels in various areas of law enforcement. If areas of deficiency are noted, arrangements are made for additional training and/or experience to remedy the situation.  [UF 28.]

The County's policies are appropriate and constitutionally sound. All of these policies completely comply with the United States Constitution.

## XV.   **THERE IS NO LEGITIMATE CLAIM FOR PUNITIVE DAMAGES**

The purpose of exemplary or punitive damages is to punish a defendant and deter similar conduct in the future. *Smith v. Wade*, 461 U.S. 30, 54 (U.S. 1983). "[P]unitive damages are never awarded as a matter of right, are disfavored by the law, and should be granted with the greatest of caution and only in the clearest of cases." *Directi Internet Solutions Pvt. Ltd. v. Dhillon*, 2013 U.S. Dist. LEXIS 15706 (E.D. Cal. Feb. 1, 2013).

"A jury may award punitive damages under section 1983 either when a defendant's conduct was driven by evil motive or intent, or when it involved a

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

4833-3566-5445.1                                                      8:14-cv-01134-JVS-RNB
31
MOTION FOR SUMMARY JUDGMENT OR PARTIAL SUMMARY JUDGMENT

reckless or callous indifference to the constitutional rights of others." *Davis v. Mason County,* 927 F.2d 1473, 1485 (9th Cir. 1991).  Ninth Cir. Model Instruction No. 5.5 provides:

> The plaintiff has the burden of proving. . . that punitive damages should be awarded. . .You may award punitive damages only if you find that the defendant's conduct that harmed the plaintiff was malicious, oppressive or in reckless disregard of the plaintiff's rights. Conduct is malicious if it is accompanied by ill will, or spite, or if it is for the purpose of injuring the plaintiff. Conduct is in reckless disregard of the plaintiff's rights if, under the circumstances, it reflects complete indifference to the plaintiff's safety or rights, or if the defendant acts in the face of a perceived risk that its actions will violate the plaintiff's rights under federal law. An act or omission is oppressive if the defendant injures or damages or otherwise violates the rights of the plaintiff with unnecessary harshness or severity, such as by the misuse or abuse of authority or power or by the taking advantage of some weakness or disability or misfortune of the plaintiff.

Here, the undisputed facts show Deputy Higgins was trying to prevent further serious injury or death to himself, Deputy Lopez, and the community members. Deputy Higgins did not act maliciously or with reckless disregard of the decedent's rights. Nothing in the record indicates Deputy Higgins acted with ill will or spite. There is no basis for imposition of punitive damages.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

4833-3566-5445.1

32

8:14-cv-01134-JVS-RNB

MOTION FOR SUMMARY JUDGMENT OR PARTIAL SUMMARY JUDGMENT

1  **XVI.  <u>CONCLUSION</u>**

2          Based on the foregoing, Defendants respectfully request the Court grant this

3  Motion in its entirety.

4  DATED: August 10, 2015                LEWIS BRISBOIS BISGAARD & SMITH LLP

5

6

7                                        By:  _____/s/ Matthew P. Harrison_____

8                                             Dana Alden Fox
                                              Matthew P. Harrison
9                                             Attorneys for Defendants, County of
                                              Orange and Michael Higgins
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

4833-3566-5445.1                              33                        8:14-cv-01134-JVS-RNB
                    MOTION FOR SUMMARY JUDGMENT OR PARTIAL SUMMARY JUDGMENT