**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| KIMBERLY J. ZION, individually and as successor in interest to Connor Zion,<br><br>*Plaintiff-Appellant*,<br><br>v.<br><br>COUNTY OF ORANGE; MICHAEL HIGGINS,<br><br>*Defendants-Appellees.* | No. 15-56705<br><br>D.C. No.<br>8:14-cv-01134-JVS-RNB<br><br>OPINION |

Appeal from the United States District Court
for the Central District of California
James V. Selna, District Judge, Presiding

Argued and Submitted June 6, 2017
Pasadena, California

Filed November 1, 2017

Before: Stephen Reinhardt and Alex Kozinski, Circuit
Judges, and Terrence Berg,[*] District Judge.

Opinion by Judge Kozinski

---

[*] The Honorable Terrence Berg, United States District Judge for the
Eastern District of Michigan, sitting by designation.

2          ZION V. COUNTY OF ORANGE

# SUMMARY[**]

## Civil Rights

The panel affirmed in part and reversed in part the district court's summary judgment and remanded in an action brought pursuant to 42 U.S.C. § 1983 and state law alleging that a County of Orange police officer used excessive deadly force when he shot Connor Zion and killed him.

County of Orange police officer Michael Higgins fired nine rounds at Zion after witnessing him stab a fellow officer in the arms with a knife and run away. Police video footage showed that after Zion fell to the ground, Higgins ran towards the body and fired nine more rounds from a distance of about four feet. While Zion was still moving on the ground in fetal position, Higgins stomped on Zion's head three times.

Addressing the Fourth Amendment excessive force claim, the panel held that if a suspect is on the ground and appears wounded, he may no longer pose a threat. A reasonable officer would then reassess the situation rather than continue shooting. This is particularly true when the suspect wields a knife rather than a firearm. The panel held that in this case, a jury could reasonably conclude that Higgins could have sufficiently protected himself and others after Zion fell by pointing his gun at Zion and pulling the trigger only if Zion attempted to flee or attack. Although Higgins testified that Zion was trying to get up, the panel determined that in light of the video footage to the contrary, the issue of whether Zion

---

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

attempted to flee or attack involved a dispute of fact that had to be resolved by a jury.  The panel held that if a jury determined that Zion no longer posed an immediate threat, any deadly force Higgins used after that time violated long-settled Fourth Amendment law.  Higgins would therefore have been on notice that his conduct was unlawful and defendants would not be entitled to qualified immunity.

Addressing the Fourteenth Amendment due process claim, the panel held that Higgins didn't violate the Fourteenth Amendment by emptying his weapon at Zion because whether excessive or not, the shootings served the legitimate purpose of stopping a dangerous suspect.  The panel held that the head stomps were different.  The panel held that like forced stomach-pumping, head-stomping a suspect curled up in the fetal position is bound to offend even hardened sensibilities.  The panel held that a jury could reasonably find that Higgins knew or easily could have determined that he had already rendered Zion harmless.  If so, a reasonable jury could also conclude that Higgins was acting out of anger or emotion rather than any legitimate law enforcement purpose.

The panel affirmed the district court's summary judgment on plaintiff's municipal liability claims under *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978) because plaintiff admitted in the district court that they lacked merit.  The panel remanded plaintiff's remaining claims to the district court to consider in the first instance.

**COUNSEL**

Jerry L. Steering (argued) and Brenton W. Aitken Hands, Law Office of Jerry L. Steering, Newport Beach, California, for Plaintiff-Appellant.

Lann G. McIntyre (argued), Lewis Brisbois Bisgaard & Smith LLP, San Diego, California; Greg Ryan, Matthew P. Harrison, and Dana Alden Fox, Lewis Brisbois Bisgaard & Smith LLP, Los Angeles, California; for Defendants-Appellees.

**OPINION**

KOZINSKI, Circuit Judge:

When police confront a suspect who poses an immediate threat, they may use deadly force against him. But they must stop using deadly force when the suspect no longer poses a threat. We explore the murky boundary between these two circumstances.

**BACKGROUND**

Connor Zion suffered several seizures. He then had a seemingly related episode where he bit his mother and cut her and his roommate with a kitchen knife. Police were called. Deputy Juan Lopez arrived at Zion's apartment complex. As Lopez exited his police car, Zion ran at him and stabbed him in the arms. Deputy Michael Higgins drove up separately and witnessed the attack on Lopez.

What happened next is captured in two videos taken by cameras mounted on the dashboards of the two police cruisers.[1]   Zion is seen running toward the apartment complex.  Lopez Video 2:58.  Higgins shoots at him from about fifteen feet away.  Higgins Video 3:25.  Nine shots are heard and Zion falls to the ground.  Lopez Video 2:54.  Higgins then runs to where Zion has fallen and fires nine more rounds at Zion's body from a distance of about four feet, emptying his weapon.  *Id.* at 3:00–03.  Zion curls up on his side.  *Id.*  Higgins pauses and walks in a circle.  *Id.* at 3:05.  Zion is still moving.  *Id.* at 3:00–12.  Higgins then takes a running start and stomps on Zion's head three times.  *Id.* at 3:11–20.

Zion died at the scene.  His mother brought suit under 42 U.S.C. § 1983, claiming Higgins used excessive force.  She also claims Higgins deprived her of her child without due process.  She raised a separate substantive due process claim on Zion's behalf, municipal liability claims and various state law claims.  The district court granted summary judgment to defendants on all claims.

## ANALYSIS

### A.  Fourth Amendment

**1.**  Police use of force is excessive and violates the Fourth Amendment if it's objectively unreasonable under the circumstances.  *Graham* v. *Connor*, 490 U.S. 386, 388 (1989); *Scott* v. *Harris*, 550 U.S. 372, 383 (2007).  We assess

---

[1] The videos can be viewed at https://www.ca9.uscourts.gov/media/ 15-56705/evidence/Lopez (Lopez Video) and https://www.ca9.uscourts. gov/media/15-56705/evidence/Higgins (Higgins Video).

reasonableness using the non-exhaustive *Graham* factors: "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." 490 U.S. at 396. The most important factor is whether the suspect posed an immediate threat. *Mattos* v. *Agarano*, 661 F.3d 433, 441 (9th Cir. 2011) (en banc). If the evidence, viewed in the light most favorable to plaintiff, could support a jury finding of excessive force, defendants aren't entitled to summary judgment. *Smith* v. *City of Hemet*, 394 F.3d 689, 701 (9th Cir. 2005) (en banc).

Plaintiff doesn't challenge Higgins's initial nine-round volley, but does challenge the second volley (fired at close range while Zion was lying on the ground) and the head-stomping. By the time of the second volley, Higgins had shot at Zion nine times at relatively close range and Zion had dropped to the ground. In the video, Zion appears to have been wounded and is making no threatening gestures. Lopez Video 3:04. While Higgins couldn't be sure that Zion wasn't bluffing or only temporarily subdued, Zion *was* lying on the ground and so was not in a position where he could easily harm anyone or flee. A reasonable jury could find that Zion was no longer an immediate threat, and that Higgins should have held his fire unless and until Zion showed signs of danger or flight. Or, a jury could find that the second round of bullets was justified, but not the head-stomping.

Defendants argue that Higgins's continued use of deadly force was reasonable because Zion was still moving. They quote *Plumhoff* v. *Rickard*: "[I]f police officers are justified in firing at a suspect in order to end a severe threat to public safety, the officers need not stop shooting until the threat has ended." 134 S. Ct. 2012, 2022 (2014). But terminating a

threat doesn't necessarily mean terminating the suspect.  If the suspect is on the ground and appears wounded, he may no longer pose a threat; a reasonable officer would reassess the situation rather than continue shooting.  *See id.*  This is particularly true when the suspect wields a knife rather than a firearm.[2]  In our case, a jury could reasonably conclude that Higgins could have sufficiently protected himself and others after Zion fell by pointing his gun at Zion and pulling the trigger only if Zion attempted to flee or attack.

Higgins testified that Zion was trying to get up.  But we "may not simply accept what may be a self-serving account by the police officer."  *Scott* v. *Henrich*, 39 F.3d 912, 915 (9th Cir. 1994).  This is especially so where there is contrary evidence.  In the video, Zion shows no signs of getting up.  Lopez Video 3:01.  This is a dispute of fact that must be resolved by a jury.

**2.**  The Fourth Amendment right here was "clearly established."  *White* v. *Pauly*, 137 S. Ct. 548, 552 (2017) (per curiam).  If a jury determines that Zion no longer posed an immediate threat, any deadly force Higgins used after that time violated long-settled Fourth Amendment law.  We have cases holding that the use of deadly force against a non-threatening suspect is unreasonable.  *See, e.g.*, *Tennessee* v. *Garner*, 471 U.S. 1, 11–12 (1985); *Harris* v. *Roderick*, 126 F.3d 1189, 1201 (9th Cir. 1997).  We've also held that continued force against a suspect who has been brought to the ground can violate the Fourth Amendment.  In *Drummond* v.

---

[2] It may be that, once on the ground, Zion had dropped the knife. Whether the knife was still in Zion's hand or within his reach, and whether Higgins thought Zion was still armed, are factual questions that only a jury can resolve.

*City of Anaheim*, we found that officers used excessive force by sitting on a prone suspect's back, asphyxiating him. 343 F.3d 1052, 1057–58 (9th Cir. 2003). And in *Davis* v. *City of Las Vegas*, we held that an officer violated the Fourth Amendment by punching a handcuffed suspect in the face while the suspect lay on the floor. 478 F.3d 1048, 1053 (9th Cir. 2007). If a jury were to find that Higgins shot and/or stomped on Zion's head after Zion no longer posed an immediate threat, Higgins would have been "on notice that his conduct would be clearly unlawful." *Saucier* v. *Katz*, 533 U.S. 194, 202 (2001). Defendants therefore aren't entitled to qualified immunity.

**B.  Fourteenth Amendment**

Parents "have a Fourteenth Amendment liberty interest in the companionship and society of their children." *Wilkinson* v. *Torres*, 610 F.3d 546, 554 (9th Cir. 2010). Excessive force claims typically must be "analyzed under the Fourth Amendment's 'objective reasonableness' standard, rather than under a substantive due process standard." *Graham*, 490 U.S. at 388. But a familial relations claim alleges a different constitutional violation under the Due Process Clause that isn't barred by *Graham*. *Curnow* v. *Ridgecrest Police*, 952 F.2d 321, 325 (9th Cir. 1991). Conduct that "shocks the conscience" violates due process. *Wilkinson*, 610 F.3d at 554.

Higgins violated the Fourteenth Amendment if he acted with "a purpose to harm without regard to legitimate law enforcement objectives." *Porter* v. *Osborn*, 546 F.3d 1131, 1133 (9th Cir. 2008). Plaintiff mistakenly argues that the lower "deliberate indifference" standard applies. That standard is appropriate only where "actual deliberation is

practical." *Id.* at 1137 (quoting *Moreland* v. *Las Vegas Metro. Police Dep't*, 159 F.3d 365, 372 (9th Cir. 1998)).

Higgins didn't violate the Fourteenth Amendment by emptying his weapon at Zion. The two volleys came in rapid succession, without time for reflection. Whether excessive or not, the shootings served the legitimate purpose of stopping a dangerous suspect.

The head stomps are different. After the two volleys, the video shows Higgins walking around in a circle for several seconds before returning for the head strikes. He even takes a running start before each strike. Lopez Video 3:11. This is exactly the kind of "brutal" conduct the Due Process Clause protects against. *Breithaupt* v. *Abram*, 352 U.S. 432, 435 (1957). Like forced stomach-pumping, head-stomping a suspect curled up in the fetal position "is bound to offend even hardened sensibilities." *Rochin* v. *California*, 342 U.S. 165, 172 (1952); *see United States* v. *Cameron*, 538 F.2d 254 (9th Cir. 1976).

This case is akin to *A.D.* v. *California Highway Patrol*, where we found that an officer violated due process by shooting a suspect who posed no immediate threat. 712 F.3d 446, 451, 458 (9th Cir. 2013). The suspect there had repeatedly rammed her car into the officer's vehicle, but the officer saw that the suspect had no weapons and ten seconds elapsed between the ramming and the shooting. *Id.* at 451. Similarly, here a reasonable jury could find that Higgins knew he had rendered Zion incapable of causing harm or fleeing. Higgins had just fired eighteen bullets in Zion's direction, half of them at very close range while Zion lay on the ground. No competent officer could have failed to at least wound his target under these conditions. Higgins then paused

before delivering what appear to be vicious blows to Zion's head.  Lopez Video 3:04–12.  A jury could reasonably find that Higgins knew or easily could have determined that he had already rendered Zion harmless.  If so, a reasonable jury could also conclude that Higgins was acting out of anger or emotion rather than any legitimate law enforcement purpose.

## C.  Remaining Claims

**1.**   The district court granted summary judgment on plaintiff's municipal liability claims under *Monell* v. *Dep't of Soc. Servs.*, 436 U.S. 658 (1978), because plaintiff admitted that they lacked merit.  Plaintiff doesn't challenge this finding on appeal.  She argues instead that we should restore these claims because the district court relied on its erroneous Fourth and Fourteenth Amendment rulings in rejecting the *Monell* claims.  But the district court relied on plaintiff's concession, not on its Fourth or Fourteenth Amendment holdings.  We affirm the district court as to the *Monell* claims.

**2.**   The district court did rely on its rejection of plaintiff's Fourth Amendment and familial relations claims in summarily resolving plaintiff's remaining substantive due process and state law claims in defendants' favor.  We remand to the district court for it to consider these claims in the first instance.  *See Drummond*, 343 F.3d at 1062.

The videos—Exhibits A and B—shall be unsealed.

**AFFIRMED IN PART, REVERSED IN PART AND REMANDED.**

**Plaintiff shall recover her costs.**