1  Dan Stormer, Esq. [S.B. #101967]
2  Cindy Pánuco, Esq. [S.B. #266921]
   Brian Olney, Esq. [S.B. #298089]
3  HADSELL STORMER & RENICK LLP
   128 N. Fair Oaks Avenue
4  Pasadena, California 91103
   Telephone:  (626) 585-9600
5  Facsimile:  (626) 577-7079
   Emails: dstormer@hadsellstormer.com
6         cpanuco@hadsellstormer.com
          bolney@hadsellstormer.com
7
   Attorneys for Plaintiff
8
9              UNITED STATES DISTRICT COURT
10            CENTRAL DISTRICT OF CALIFORNIA
11
12  KIMBERLY J. ZION, individually and as    Case No.: 8:14-cv-01134-JVS-JDE
13  successor in interest to CONNOR ZION
                                              [Assigned to the Honorable James V. Selna -
14         Plaintiff,                         Courtroom 10C]
15         v.
                                              PLAINTIFF'S MOTION FOR
16  COUNTY OF ORANGE, MICHAEL                 ATTORNEYS' FEES AND NON-
    HIGGINS, and DOES 1 through 10,           TAXABLE COSTS
17  inclusive,
                                              DATE:      March 25, 2019
18         Defendants.                        TIME:      1:30 p.m.
                                              CRTRM:     10C
19
20                                            [Filed concurrently herewith:
                                              1) Compendium of Evidence; and
21                                            2) [Proposed] Order]
22
23
24
25
26
27
28

**TO DEFENDANTS AND THEIR ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE that on March 25, 2019, at 1:30 p.m., or as soon thereafter as the matter may be heard by the above-entitled Court, located at 411 West 4th Street, Santa Ana, California 92701, Plaintiff Kimberly Zion individually and as successor in interest to Connor Zion, will, and hereby does, move the Court for an order for attorneys' fees and costs.

This motion is based on this Notice of Motion, Plaintiff's Memorandum of Points and Authorities, the Declarations and Exhibits filed in support thereof, all pleadings and papers on file in this action, and upon such other matters as may be presented to the Court at the time of the hearing. Pursuant to Local Rule 7-3, Plaintiff met and conferred by phone with counsel for Defendants about the subject of this motion on February 15, 2019. Declaration of Cindy Pánuco ("Pánuco Decl.") ¶ 2.

Dated: February 20, 2019             Respectfully Submitted,

                                     HADSELL STORMER & RENICK LLP


                                     By:   ___/s/ - Cindy Pánuco_____
                                             Dan Stormer
                                             Cindy Pánuco
                                             Brian Olney
                                     Attorneys for Plaintiff

# TABLE OF CONTENTS

Page(s)

TABLE OF AUTHORITIES ................................................................................ iii

I.    INTRODUCTION ........................................................................................ 1

II.   FACTUAL AND PROCEDURAL BACKGROUND ................................. 2

    A.   Defendants Required Plaintiff's Prior Counsel to Oppose Two
        Motions to Dismiss, a Motion for Summary Judgment, and
        File an Appeal. ................................................................................ 2

    B.   After Current Counsel Substituted into the Case, 100% of The
        Hours, Discovery, and Resources Expended, Led to Success on
        Plaintiff's Fourth Amendment Claim ............................................. 4

        1.   Defendants required Hadsell Stormer to spend significant
            time filing a contested motion to re-open discovery. ........... 5

        2.   Defendants obstructed access to Court-ordered discovery,
            requiring that Plaintiff file an *ex parte* application and a
            motion for sanctions ............................................................. 6

        3.   Defendants forced Plaintiff to engage in extensive pre-trial
            motions practice .................................................................... 8

    C.   Ms. Zion's Counsel Achieved an Extraordinary Unanimous Jury
        Verdict and Award of $360,000 ..................................................... 9

III.  ARGUMENT ............................................................................................. 10

    A.   Plaintiff is the Prevailing Party and Entitled to Fees and Costs .... 10

    B.   Plaintiff's Fee Request Is Reasonable ............................................ 11

        1.   Plaintiff's hours are reasonable .......................................... 12

            a.   Underlying Litigation ............................................... 12

            b.   Fee motion ................................................................ 15

2.  Plaintiff's Counsel's Rates are Reasonable ......................... 16

C.  Adjustment of the Lodestar ............................................................. 17

1.  No Downward Adjustment is Appropriate .......................... 17

a.  The claims on which Plaintiff did not prevail are related
    to the successful Fourth Amendment claim ............................ 17

b.  Excellent results .......................................................... 20

D.  Litigation Expenses and Costs ...................................................... 22

IV.  CONCLUSION ............................................................................................ 24

APPENDIX A: Description of Calculations for Attorney's Fees and Costs ..................... 25

# TABLE OF AUTHORITIES

**Page(s)**

## FEDERAL CASES

*AF Holdings LLC v. Navasca*
   No. C-12-2396 EMC, 2013 U.S. Dist. LEXIS 102249
   (N.D. Cal., July 22, 2013)........................................................................ 14

*Bouman v. Block*
   940 F.2d 1211 (9th Cir. 1991) ................................................................. 11

*Brown v. Cascade Mgmt.*
   No. 3:15-cv-01585-HZ, 2018 U.S. Dist. LEXIS 150091
   (D. Or. Sep. 4, 2018)................................................................................ 24

*Burgess v. Premier Corp.*
   727 F.2d 826 (9th Cir. 1984) ................................................................... 13

*Chalmers v. City of Los Angeles*
   796 F.2d 1205 (9th Cir. 1986) ................................................................. 16

*Dang v. Cross*
   422 F.3d 800 (9th Cir. 2005) ..................................................................... 2

*Davis v. City & Cty. of San Francisco*
   976 F.2d 1536 (9th Cir. 1992), *opinion vacated in part on unrelated*
   *grounds on denial of reh'g*, 984 F.2d 345 (9th Cir. 1993) ...................... 16

*Farrar v. Hobby*
   506 U.S. 103 (1992)..................................................................... 10, 11, 21

*Gomez v. Gates*
   804 F. Supp. 69 (C.D. Cal. 1992)............................................................ 22

*Gonzalez v. City of Maywood*
   729 F.3d 1196 (9th Cir. 2013) .......................................................... *passim*

*Graham v. Sauk Prairie Police Commission*
   915 F.2d 1085 (7th Cir. 1990) ................................................................. 13

*Guam Soc'y of Obstetricians & Gynecologists v. Ada*
   100 F.3d 691 (9th Cir. Guam 1996) ........................................................ 21

*Harris v. Marhoefer*
    24 F.3d 16 (9th Cir.1994) .......................................................... 22, 23, 24

*Hensley v. Eckerhart*
    461 U.S. 424 (1983).......................................................................... *passim*

*Hernandez v. Grullense*
    No. 12-CV-03257-WHO, 2014 U.S. Dist. LEXIS 61020
    (N.D. Cal., Apr. 30, 2014) ................................................................. 14

*Hiken v. Dep't of Defense*
    Case No. 13-17073, slip op., 2016 U.S. App. LEXIS 16359
    (9th Cir. Sept. 6, 2016) ...................................................................... 16

*Huimin Song v. Cnty. of Santa Clara*
    No. 5:11-CV-04450-EJD, 2015 U.S. Dist. LEXIS 168453,
    2015 WL 8770714 (N.D. Cal. Dec. 15, 2015) .................................. 23

*Int'l Woodworkers of Am., AFL-CIO, Local 3-98 v. Donovan*
    792 F.2d 762 (9th Cir. 1985) ............................................................ 23

*Klein v. City of Laguna Beach*
    810 F.3d 693 (9th Cir. 2016) ............................................................ 10

*Leetzow v. Metro. Life Ins. Co.*
    No. EDCV 15-2468-VAP, 2017 U.S. Dist. LEXIS 53904
    (C.D. Cal. Mar. 3, 2017)................................................................... 23

*McCown v. City of Fontana*
    565 F.3d 1097 (9th Cir. 2008) ..................................................... 18, 19

*McGrath v. Co. of Nevada*
    67 F. 3d 248 (9th Cir. 1995) ............................................................. 11

*Missouri v. Jenkins*
    491 U.S. 274 (1989)........................................................................... 15

*Morales v. City of San Rafael*
    96 F.3d 359 (9th Cir. 1996) .......................................................... 20, 21

*Moreno v. City of Sacramento*
    534 F.3d 1106 (9th Cir. 2008) ................................................. 12, 13, 14

*Nat'l Org. for Women v. Bank of Cal., Nat'l Ass'n.*
    680 F.2d 1291 (9th Cir. 1982) .......................................................... 22

*Newman v. City of Payette*
    No. 1:15-CV-00145-CWD, 2016 U.S. Dist. LEXIS 54335,
    2016 WL 1611430 (D. Idaho Apr. 21, 2016) ........................................ 23

*Oberfelder v. City of Petaluma*
    No. C-98-1470 MHP, 2002 U.S. Dist. Lexis 8635
    (N.D. Cal. Jan. 29. 2002) .................................................................... 21

*Orr v. California Highway Patrol*
    No. 2:14-585 WBS EFB, 2015 U.S. Dist. LEXIS 170862,
    2015 WL 9305021 (E.D. Cal. Dec. 22, 2015) .................................... 23

*Park, ex rel. Park v. Anaheim Union High Sch. Dist.*
    464 F.3d 1025 (9th Cir. 2006) ............................................................ 11

*Perdue v. Kenny A.*
    559 U.S. 542 (2010) ...................................................................... 12, 16

*Pierce v. Cty. of Orange*
    905 F. Supp. 2d 1017 (C.D. Cal. 2012) .......................................... 15, 23

*Rivera v. City of Riverside*
    763 F.2d 1580 (9th Cir.1985), *aff'd on other grounds*,
    477 U.S. 561 (1986) ............................................................................ 21

*Riverside v. Rivera*
    477 U.S. 561 (1986) ............................................................................ 13

*Rodriguez v. City of Los Angeles*
    96 F.Supp.3d 1012 (C.D. Cal. 2014) ........................................... *passim*

*Schwarz v. Secretary of Health and Human Services*
    73, F.3d 895, 903 (9th Cir. 1995) ....................................................... 18

*Sorenson v. Mink*
    239 F.3d 1140 (9th Cir. 2001) ............................................................ 21

*Sound v. Koller*
    No. 09-00409 JMS/KSC, 2010 U.S. Dist. LEXIS 49665
    (D. Haw. May 19, 2010) ..................................................................... 23

*Texas Teachers v. Garland School Dist.*
    489 U.S. 782 (1989) ............................................................................ 10

/ / /

*Thomas v. City of Tacoma*
    410 F.3d 644 (9th Cir. 2005) ................................................................. 20

*Thorne v. City of El Segundo*
    802 F.2d 1131 (9th Cir. 1986) ............................................................... 19

*Tribble v. Gardner*
    860 F.2d 321 (9th Cir. 1988) ................................................................. 13

*Waldo v. Consumers Energy Co.*
    726 F.3d 802 (6th Cir. 2013) ................................................................. 23

*Webb v. Sloan*
    330 F.3d 1158 (9th Cir. 2003) ............................................................... 19

*Willis v. City of Fresno*
    680 F. App'x 589 (9th Cir. 2017), *cert denied*, 138 S. Ct. 220 (2017) ................... 13

*Zion v. Cty. of Orange*
    874 F.3d 1072 (9th Cir. 2017) ............................................................ 2, 4

## STATE CASES

*Serrano v. Unruh*
    32 Cal. 3d 621 (1982) ........................................................................ 15

## FEDERAL STATUTES AND REGULATIONS

42 U.S.C.
    § 1983 ............................................................................... *passim*
    § 1988 ............................................................................... *passim*
    § 1988(b)............................................................................... 10

Federal Rules of Civil Procedures
    § 26(a)(2)(B)........................................................................... 3
    § 54(d)................................................................................ 22

## STATE STATUTES AND REGULATIONS

Bane Act
    § 52.1 ................................................................................. 3

# I.   INTRODUCTION

On January 18, 2019, a jury unanimously rejected Defendants' arguments that Deputy Michael Higgins ("Higgins") used reasonable force when he killed Connor Zion. After the damages phase of the trial, on January 22, 2018, the jury also unanimously rejected the Defendants' arguments that Connor Zion did not suffer before he died, and awarded Plaintiff $360,000. This verdict came five and one half years after Connor's killing on September 24, 2013; and only after counsel for Plaintiff,[1] Hadsell Stormer & Renick LLP ("Hadsell Stormer"), worked relentlessly for over six months, and without any reimbursement for their time or tens of thousands of dollars advanced on litigation expenses. Hadsell Stormer devoted time and resources that two prior law firms had not, and trial counsel Dan Stormer, Cindy Pánuco and Brian Olney expended the time that in their judgement was necessary, to prove that Higgins violated Plaintiff's civil rights. The substantial time and resources they expended while assuming substantial risk in a case that had already been lost on summary judgment, resulted in nothing short of vindication for the violation of Connor's Fourth Amendment rights.

To ensure that the important public policies underlying 42 U.S.C. § 1983 are adequately vindicated through private enforcement actions, § 1988 provides for the recovery of reasonable attorney's fees and litigation costs in this case. The excellent results obtained in this litigation, counsel's skill and experience, the difficulties and complexities of this case, the enormous risk taken on by Plaintiff's counsel, and the aggressive and obstructive litigation tactics employed by Defendants County of Orange ("County") and Higgins, all justify a full recovery of Plaintiff's counsel's reasonable attorney's fees and litigation costs.

---

[1] Hadsell Stormer & Renick LLP was the third law firm to represent Ms. Zion. Prior to Hadsell Stormer substituting into the case, Ms. Zion was represented by the Law Offices of Jerry L. Steering ("Mr. Steering") from 2013 through November 2017, and then by Brian Dunn of the Cochran Firm from November 2017 through May 2018. This motion includes fees for the time spent by her two prior firms, and their costs. The Cochran Firm filed a lien on this case on January 2, 2019. (Dkt. No. 215).

## II.  FACTUAL BACKGROUND AND PROCEDURAL HISTORY

The facts relaying how Connor Zion was killed by Defendant Deputy Higgins on September 24, 2013, are concisely set forth by the Ninth Circuit:

> Connor Zion suffered several seizures. He then had a seemingly related episode where he bit his mother and cut her and his roommate with a kitchen knife. Police were called. Deputy Juan Lopez arrived at Zion's apartment complex. As Lopez exited his police car, Zion ran at him and stabbed him in the arms. Deputy Michael Higgins drove up separately and witnessed the attack on Lopez.

> What happened next is captured in two videos taken by cameras mounted on the dashboards of the two police cruisers. Zion is seen running toward the apartment complex. Lopez Video 2:58. Higgins shoots at him from about fifteen feet away. Higgins Video 3:25. Nine shots are heard and Zion falls to the ground. Lopez Video 2:54. Higgins then runs to where Zion has fallen and fires nine more rounds at Zion's body from a distance of about four feet, emptying his weapon. *Id.* at 3:00-03. Zion curls up on his side. *Id.* Higgins pauses and walks in a circle. *Id.* at 3:05. Zion is still moving. *Id*. at 3:00-12. Higgins then takes a running start and stomps on Zion's head three times. *Id*. at 3:11-20.

*Zion v. Cty. of Orange*, 874 F.3d 1072, 1075 (9th Cir. 2017).

**A.  Defendants Required Plaintiff's Prior Counsel to Oppose Two Motions to Dismiss, a Motion for Summary Judgment, and File an Appeal.**

Ms. Zion retained a private investigator to determine how her only son came to be brutally killed by Orange County Sheriff's Deputies. Pánuco Decl. Ex. 1 (invoice of investigator). She also arranged, and paid for a private autopsy. Pánuco Decl. Ex. 2.

After her Government Tort Claim was rejected by the County, Ms. Zion, then represented by prior counsel Jerry L. Steering, filed the initial complaint in this action on July 18, 2014. (Dkt No. 1). Her Complaint pled eleven claims for relief: (1) Excessive Force in Violation of the Fourth Amendment (42 U.S.C. § 1983); (2) Unreasonable Seizure in Violation of the Fourth Amendment (42 U.S.C. § 1983); (3) Deprivation of

1   Parent-Child Relationship in Violation of the Fourteenth Amendment (42 U.S.C. §

2   1983); (4) Deprivation of Life Without Due Process of Law (42 U.S.C. § 1983); (5)

3   Wrongful Death; (6) Failure To Train (42 U.S.C. § 1983); (7) Failure to Adequately

4   Screen, Hire, and Discipline (42 U.S.C. § 1983); (8) Negligence; (9) Intentional

5   Infliction of Emotional Distress; (10) Violation of the Bane Act § 52.1; and (11) Battery.

6   *Id.* On August 1, 2014, Plaintiff filed her First Amended Complaint. (Dkt. No. 13).

7   Defendants moved to dismiss all eleven claims, and moved to abate the wrongful death

8   claim on September 12, 2014. (Dkt. Nos. 16, 18). Plaintiff opposed the motion to

9   dismiss (Dkt. No. 21), and then filed the operative complaint — the Second Amended

10  Complaint — on December 8, 2014. (Dkt. No. 27). The Second Amended Complaint

11  pled the same claims, save for the negligence claim. Defendants argued, and the court

12  agreed, that the negligence allegations were duplicative of, and covered by, the wrongful

13  death claim. (*See* Dkt. No. 23 at p. 7).

14          During the fact discovery phase of the case in 2015, Defendants noticed and took a

15  total of nine depositions. They deposed seven third-party witnesses:  Joel Walden, Phil

16  Kams, Darlene Carpenter, Beverly Dickson, Melvin Herlin and Gina Simonian.

17  Defendants also deposed Ms. Zion, and Howard Oliver, a forensic pathologist retained by

18  Ms. Zion to conduct an independent autopsy on Connor. <u>Pánuco Decl. ¶ 6.</u> Defendants

19  also served written discovery on Plaintiff. *Id.*

20          Hadsell Stormer ultimately had to expend significant time to overcome a number of

21  discovery issues flowing from prior representation. This is because Mr. Steering, had only

22  taken two depositions: Deputy Juan Lopez and Defendant Deputy Michael Higgins.

23  <u>Pánuco Decl. ¶ 7.</u> Prior to the fact discovery cut-off, Mr. Steering unfortunately failed to

24  file any timely written discovery requests, and obtained no documents from Defendants

25  beyond their Rule 26 Initial Disclosures. <u>Pánuco Decl. ¶ 7.</u> During expert discovery, Mr.

26  Steering had also failed to designate a police practices expert (or any other expert under

27  FRCP 26(a)(2)(B)), failed to designate a rebuttal expert in response to Defendants'

28  designation of their own police practices expert, and failed to depose any of Defendants'

1    expert witnesses. <u>Pánuco Decl. ¶ 8.</u>

2         On August 11, 2015, Defendants moved for summary judgment on all of Plaintiff's

3    claims. (Dkt. No. 43). This required Plaintiff's counsel at the time (Mr. Steering) to

4    expend significant time filing Plaintiff's opposition on September 14, 2015. (Dkt. No. 54).

5    On October 22, the Court granted Defendants' motion in its entirety. (Dkt No. 69).

6    Plaintiff's counsel had to expend time and resources preparing an appeal. (Dkt No. 73).

7    Mr. Steering represented Ms. Zion on appeal.

8         The Ninth Circuit reversed (in part) the order granting summary judgment on

9    Plaintiff's Fourth Amendment, Fourteenth Amendment, and state law claims (wrongful

10   death, intentional infliction of emotional distress, Bane Act, and battery) on November

11   1, 2017. (Dkt. No. 79). The Ninth Circuit ordered that Ms. Zion shall recover her costs,

12   *Zion*, 874 F.3d at 1078.[2] On appeal, the circuit court affirmed summary adjudication of

13   Plaintiff's *Monell* claims, *Zion*, 874 F.3d at 1077, and Plaintiff's concession that the first

14   volley of nine shots did not violate the Fourth Amendment. *Zion*, 874 F.3d at 1075. The

15   high court also ruled that all 18 gun shots were not actionable under the Fourteenth

16   Amendment. Accordingly Ms. Zion's Fourth Amendment claim proceeded as to the

17   second volley of shots and three head stomps. *Zion*, 874 F.3d at 1077. Her Fourteenth

18   amendment claim proceeded only as to the head stomps. *Id.*

19   **B.    After Current Counsel Substituted into the Case, 100% of The Hours,**

20        **Discovery, and Resources Expended, Led to Success on Plaintiff's Fourth**

21        **Amendment Claim.**

22        After the Ninth Circuit issued its order, Ms. Zion determined that unfortunately,

23   Mr. Steering's conduct, and failure to do any fact or expert discovery, indicated that he

24   was not equipped to take her case to trial. Declaration of Kimberly Zion ("Zion Decl.")

25   ¶10.

26        Ms. Zion quickly obtained new counsel, and on November 8, 2017, filed a notice

27

28   [2] Ms. Zion seeks recovery of her costs on appeal in her Bill of Costs, which was filed separately. *See* Dkt. No. 304.

of appearance for attorney Brian Dunn with the Cochran Firm. (Dkt No. 80). The Court held a scheduling conference on December 18, 2017, during which the Court set Final PreTrial Conference and Trial dates and stated that "[a]bsent the agreement of counsel, the parties shall apply to the court to reopen discovery." (Dkt No. 94). Mr. Dunn, appeared at that hearing. Declaration of Brian Dunn ("Dunn Declaration") ¶ 4.

On January 30, 2018, Defendants filed a petition for a writ of *certiorari*, which the United States Supreme Court denied on April 16, 2018. Appeal Dkt. Nos. 53, 54. After the Supreme Court denied cert, Ms. Zion immediately contacted Mr. Dunn in April 2018, at which point she learned that he had not advanced her case or pursued any further discovery. Zion Decl. ¶¶ 11-12; *see also* Dunn Declaration ¶ 4 (time entries do not seek fees for any discovery-related tasks).

After learning that from November 2017 through April 2018, Mr. Dunn had not taken steps to prepare for trial, Ms. Zion immediately sought and retained current counsel, who promptly filed Requests for Approval of Substitution of Counsel for Mr. Dunn on June 7, 2018, which the Court granted on June 22. (Dkt Nos. 100, 101, 105, 106). Mr. Steering was substituted out at the same time, but his formal substitution was not docketed until January 4, 2019. (Dkt. Nos. 218, 222).

## 1. Defendants required Hadsell Stormer to spend significant time filing a contested motion to re-open discovery.

After current counsel substituted into this matter, the litigation was hard fought at every turn. Shortly after appearing in the case, counsel filed a contested motion to re-open discovery after identifying serious discovery deficiencies that needed to be addressed immediately to adequately prepare the case to go to trial on January 8, 2019. Pánuco Decl. ¶ 9. Plaintiff took pains to minimize the time required, limiting her request to only the most critical discovery required and asking Defendants to avoid the need for motion practice by simply stipulating to her request as the Court had permitted the Parties to do. (*See* Dkt No. 94)

Current counsel quickly initiated a meet and confer with Defendants. The Parties

held a Local Rule 7-3 telephonic conference on July 9, 2018. <u>Pánuco Decl. ¶ 11.</u>
Plaintiff sent a follow-up letter on July 24 setting forth detailed legal arguments
supporting her requests, and Defendants sent a response on July 30.  <u>Pánuco Decl. ¶ 11</u>;
Exs. 4, 5. Defendants agreed to allow Ms. Zion to depose the experts they had disclosed
in July 2015, but refused to allow her to disclose her own experts, re-open the deposition
of Defendant Higgins, or produce necessary documents related to Higgins' background,
training, and experience with the Orange County Sheriff's Department. <u>Pánuco Decl. ¶
11.</u>

Plaintiff's counsel nonetheless persisted in her efforts to pursue Defense counsel
to confer about re-opening discovery and sent several emails trying to schedule a
conference on August 1, August 6, and August 8. <u>Pánuco Decl. ¶ 12</u>; <u>Pánuco Decl. Ex.
5</u>. The great lengths to which Plaintiff had to go to work with counsel and avoid
preparing the motion, took time. <u>Pánuco Decl. ¶ 12.</u> After Defendants refused to agree,
on August 20, 2018, Ms. Zion had to file her motion seeking an order permitting
Plaintiff to: (1) designate police practices expert Mr. DeFoe; (2) designate a medical
expert to opine on Connor Zion's injuries and cause of death; (3) depose Deputy Higgins
for no more than 3 hours regarding select topics relevant to his use of force; and (4)
require Defendants to produce any policies, procedures, and trainings on use of force and
mental health disabilities given to deputies between January 2010 and October 2013 that
Defendants did not provide to their police practices expert Mr. Curtis Cope. (Dkt. No.
108). With her motion, Plaintiff served the expert report of her police practices expert,
Scott DeFoe. *Id.*

Defendants opposed the motion, Dkt. No. 109, requiring Plaintiff to file a Reply on
August 31, 2018. (Dkt. No. 110). The Court granted Plaintiff's motion without oral
argument on September 13, 2018, and ordered the requested discovery. (Dkt. No. 115)

> **2.    Defendants obstructed access to Court-ordered discovery, requiring
> that Plaintiff file an *ex parte* application and a motion for sanctions.**

Immediately following the Court's order, Plaintiff retained medical expert Dr. John

Hiserodt, who quickly determined that the County's Coroner had failed to conduct any microscopic analysis of Connor Zion's brain tissue, and that a microscopic analysis was necessary to determine the critical issue of Connor Zion's cause of death. Pánuco Decl. ¶ 13. Plaintiff immediately notified Defendants and requested that the brain tissue be made available to Dr. Hiserodt. Pánuco Decl. ¶ 13. Over the next ten days, Defendants forced Plaintiff to needlessly expend substantial time pursuing an answer to their reasonable request by refusing to confirm the existence of the brain tissue even while they refused to stipulate to jointly request an extension to Plaintiff's deadline to serve Dr. Hiserodt's expert report. Pánuco Decl. ¶ 13. Defendants thus forced Plaintiff to seek emergency *ex parte* relief from Magistrate Judge Early on October 1 compelling Defendants to produce the brain tissue and extending Plaintiff's deadline to serve her expert report. (Dkt. No. 116). Having forced Plaintiff to file this application, Defendants then informed Plaintiff the next morning that Defendants had just located the brain tissue. Pánuco Decl. ¶ 13. Plaintiff agreed to withdraw her *ex parte* pursuant to a stipulated order entered by the Court, granting Dr. Hiserodt unfettered access to "do what is necessary to complete his report" at an October 10 inspection. (Dkt. Nos. 117, 118).

At the October 10 inspection, however, Defendants refused to follow the Court order to permit Dr. Hiserodt to select his own samples of the tissue for analysis. (Dkt. No. 182-1 at ¶¶ 2-3). This caused Plaintiff's counsel to expend substantial amount of time, compelling the inspection, and prejudiced Plaintiff by preventing Dr. Hiserodt from reaching any opinion regarding the impact of the head stomps.

Defendants' aggressive litigation strategy continued to require Hadsell Stormer to devote time to respond in-kind. On October 23, Plaintiff deposed Deputy Higgins pursuant to the Court's Order granting Plaintiff leave to re-open the deposition for no more than two hours. Pánuco Decl. ¶ 14. During that brief time, Defendants' counsel coached Deputy Higgins through dozens of improper speaking objections, at times even interrupting Deputy Higgins and correcting his testimony. Defendants' counsel also instructed Deputy Higgins not to answer questions at least nine times, foreclosing many

areas of critical testimony Plaintiff was entitled to elicit under this Court's September 13 Order. Pánuco Decl. ¶ 14. All of these actions prejudiced Plaintiff by limiting her ability to develop crucial facts regarding the reasonableness of Deputy Higgins's conduct.

Defendants' repeated acts of discovery misconduct on the eve of trial forced Ms. Zion to file yet another motion, this time seeking evidentiary sanctions. (Dkt. No. 123). This Court tentatively granted her motion, ordering in relevant part that it would give an adverse instruction to the jury as follows:

> The Court finds that Dr. Hiserodt was not permitted by the County defendants to fully examine the brain tissue and document his findings. You may but are not required to infer that had he been permitted to make a complete analysis, the results would have been unfavorable to the County defendants; that is, his findings would have supported a finding that the kicks caused or contributed to Connor Zion's death.

Ex. 6. Continuing its aggressive litigation tactics, at the Pre-Trial Conference on January 3, 2019, Defendants requested, and the Court granted, an evidentiary hearing on this sanction. (Dkt. No. 219.) This required Ms. Zion to incur the additional time and expense of preparing for and appearing at the hearing, which involved witness testimony by Dr. Hiserodt and legal argument. Pánuco Decl. ¶ 15.

At the conclusion of the presentation of evidence during the hearing on January 8, 2019, the Court modified its sanction; ordering that Plaintiff could tell the jury that the County violated the Court's order compelling access to Connor's brain tissue. Pánuco Decl. ¶ 16. Following the hearing, the case proceeded to a bifurcated trial.

### 3. Defendants forced Plaintiff to engage in extensive pre-trial motions practice.

Meanwhile, Defendants forced Plaintiff to expend many additional hours of work on pre-trial evidentiary motions. Defendants refused to stipulate to any of the evidentiary issues Plaintiff identified during the Parties' pre-trial meet and confer, and similarly refused to withdraw any of the issues on which they filed motions.  As a result, Plaintiff

was forced to file four *in limine* motions and one *Daubert* motion (and the reply briefs), and oppose an additional seven *in limine* and *Daubert* motions brought by Defendants. Plaintiff largely prevailed on her motions.

## C.     Ms. Zion's Counsel Achieved an Extraordinary Unanimous Jury Verdict and Award of $360,000.

In the liability phase of the trial, Ms. Zion testified, as did her experts, Scott DeFoe and Dr. John Hiserodt, along with Deputy Lopez, Deputy Higgins, and third party witness Joel Walden by deposition. Defendants argued throughout the trial that Deputy Higgins used reasonable and necessary force against Connor when he fired a second volley of 9 bullets and stomped his head three times. After six days of trial, the jury retired to deliberate liability on Ms. Zion's remaining claims for violations of the Fourth Amendment, Fourteenth Amendment, and Bane Act, as well as for wrongful death (negligence). (Dkt. No. 250).

While the jury deliberated the remaining complex claims, counsel and the Court worked diligently to address and respond to no less than ten jury notes and questions; some of which required the Court and counsel to spend hours meeting and conferring and conducting legal research to prepare further jury instructions. (Dkt. Nos. 250, 253, 264-272; Pánuco Decl. ¶ 23). For example, Juror Note No. 7 requested  readback of "the testimony from DeFoe and Cope, specifically the use of feet/kicks by law enforcement" and "Higgins testimony regarding his behavior before/during the head kicks, specifically his testimony about looking back for Lopez and backup?" (Dkt. No.269). In response, counsel spent a few hours reviewing trial transcripts and identifying the relevant excerpts, Pánuco Decl. ¶ 23, after which the jury sent another note stating that it no longer required any readback. (Dkt. No. 269). After two days of careful deliberations, the jury rejected the Defendants' arguments and returned a unanimous verdict on January 18, 2019, finding that Higgins used excessive force against Connor Zion in violation of the Fourth Amendment. (Dkt. Nos. 261, 274).

On January 22, 2019, the damages phase was tried to the jury. (Dkt. No. 262). That

same day, the jury sent out one note requiring further instructions from the Court. (Dkt. No. 277.) Defendants argued that not only was Ms. Zion not entitled to damages, but that Connor was already dead by the time of the second volley of shots and head stomps, and thus could not have suffered. By that afternoon, the jury again rejected Defendants' arguments and unanimously awarded Ms. Zion $360,000 for Connor's pre-death pain and suffering. (Dkt. No. 280).

## III.    ARGUMENT

### A.    Plaintiff is the Prevailing Party and Entitled to Fees and Costs

Because Ms. Zion obtained a liability finding and recovery of noneconomic damages, she is the prevailing party in this action. entitled to her reasonable fees under federal law. 42 U.S.C. § 1988(b) provides that ""[i]n any action or proceeding to enforce a provision of section[] . . . 1983 . . . of this title . . . the court, in its discretion, may allow the prevailing party . . . a reasonable attorney's fee as part of the costs." *See also Klein v. City of Laguna Beach*, 810 F.3d 693, 698 (9th Cir. 2016). As the Supreme Court explained, "[u]nder our generous formulation of the term, plaintiffs may be considered 'prevailing parties' [under § 1988] for attorney's fees purposes if they succeed on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit." *Farrar v. Hobby*, 506 U.S. 103, 109 (1992) (internal citations and quotation marks omitted).

In determining whether a plaintiff has succeeded on any significant issue in litigation, the Supreme Court in *Texas Teachers v. Garland School Dist.*, 489 U.S. 782, 792 (1989), considered whether the relief on the merits of plaintiff's claim changes the legal relationship between plaintiff and defendant. Applying this test, the Court in *Farrar* held that a money judgment in favor of the plaintiff for any amount modified the defendant's behavior in a way that benefits the plaintiff by forcing the defendant to pay an amount that would otherwise not be paid. 506 U.S. at 114. Here, there is little question that Ms. Zion prevailed on her claims when the jury unanimously found that Deputy Higgins, acting under the color of law, used excessive and unreasonable force

against Connor, and awarded Ms. Zion $360,000.00 for Connor's pre-death pain and suffering.

Courts have repeatedly held that attorneys in civil rights suits are entitled to recover their full fees and costs if they achieve meaningful and substantial relief, even if they do not prevail on every theory or against every party. *See Bouman v. Block*, 940 F.2d 1211, 1237 (9th Cir. 1991) (plaintiff proceeding under multiple theories for sex discrimination and prevailing on FEPA claims entitled to recover attorneys' fees); *Park, ex rel. Park v. Anaheim Union High Sch. Dist.*, 464 F.3d 1025, 1035-36 (9th Cir. 2006) (reversing District Court's finding that child and mother were not the prevailing party, noting that "a prevailing party need not prevail on what may be considered the 'central' issue of the case); *see generally Farrar*, 506 U.S. at 114 (holding that "the prevailing party inquiry does not turn on the magnitude of the relief obtained"). As the Supreme Court explained, "[l]itigants in good faith may raise alternative legal grounds for a desired outcome, and the court's rejection of or failure to reach certain grounds is not a sufficient reason for reducing a fee. The result is what matters." *Hensley v. Eckerhart*, 461 U.S. 424, 435 (1983).

### B.    Plaintiff's Fee Request Is Reasonable

To calculate the amount of a reasonable fee courts generally start with "the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Hensley*, 461 U.S. at 433. This is known as the "lodestar." *Gonzalez v. City of Maywood*, 729 F.3d 1196, 1202 (9th Cir. 2013) *see also McGrath v. Co. of Nevada*, 67 F. 3d 248, 252 (9th Cir. 1995) (explaining method). Employing this methodology, Plaintiff seeks a total lodestar fee of $1,313,644.02. Plaintiff's fee request can be broken down as follows: $1,189,639.02 for Hadsell Stormer's work performed from May 2018 through the filing of this motion (Stormer Decl. ¶ 45; Stormer Decl. Ex. C; *see also* Appendix A to this Memorandum); $118,755.00 for the Law Office of Jerry L. Steering ("JLS") for work performed from September 24, 2013 through November 2017 (Steering Decl. ¶ 7; Ex. A to Steering Decl.); and $5,520 for Brian Dunn of the Cochran Firm

("Dunn") from November 2017 through May 2018 (<u>Dunn Decl. ¶¶ 4-5</u>).

### 1.  Plaintiff's hours are reasonable.

"Ultimately, a 'reasonable' number of hours equals 'the number of hours which could reasonably have been billed to a private client.'" *Gonzalez*, 729 F.3d at 1202 (quoting *Moreno v. City of Sacramento*, 534 F.3d 1106, 1111 (9th Cir. 2008) (internal modifications omitted)). Fees are recoverable for *all* hours reasonably spent. *Perdue v. Kenny A.*, 559 U.S. 542, 552 (2010). To determine the reasonable number of hours, courts review the attorneys' billing records. *Gonzalez*, 729 F.3d at 1202.

### a.  Underlying Litigation

As more fully set forth in Plaintiff's supporting declarations, Counsel's contemporaneous billing records reflect that they spent approximately 2,617.5 hours litigating this case (approximately 2,208.05 hours by Hadsell Stormer, 402 hours by JLS, and 7 hours by Dunn). <u>Stormer Decl. ¶ 27</u>; <u>Stormer Decl. Ex. C</u>; <u>Steering Decl. Ex. A at pp A-1- A-13</u>; <u>Dunn Decl. ¶ 7</u>. Plaintiff estimates that Hadsell Stormer will spend an additional 30 hours addressing Defendants' opposition papers. Should Defendants file post-trial motions, Plaintiff will also have to expend hours addressing those.

Where, as here, Plaintiff obtained an excellent result, the "attorney should recover a fully compensatory fee. Normally this will encompass all hours reasonably expended on the litigation . . . ." *Hensley*, 461 U.S. at 435. Further underscoring the reasonableness of the number of hours expended is that fact that counsel at Hadsell Stormer are civil rights attorneys who, for many of their cases, depend on contingency fees and attorney fee awards in particular to obtain any fees at all. <u>Stormer Decl. ¶ 28</u>; As the Ninth Circuit has noted,

> lawyers are not likely to spend unnecessary time on contingency fee cases in the hope of inflating their fees. The payoff is too uncertain, as to both the result and the amount of the fee. It would therefore be the highly atypical civil rights case where plaintiff's lawyer engages in churning. By and large, the court should defer to the winning lawyer's professional judgment as to how much time he was

1    required to spend on the case; after all, he won, and might not have, had he been

2    more of a slacker.

3    *Moreno*, 534 F.3d at 1112.

4    Here, Plaintiff's counsel expended the hours necessary to address Defendants'

5    aggressive litigation strategy which involved, *inter alia*, motions attacking the pleadings,

6    a summary judgment motion, a Ninth Circuit appeal[3], a petition to the Supreme Court,

7    refusals to re-open discovery, obstructing discovery, *nineteen* pre-trial motions (6

8    motions, 6 replies, and 7 oppositions), and a defense that Connor was dead before any

9    unreasonable use of force. Defendants' position on the timing and cause of Connor's

10   death alone, obstructing access to Connor's brain tissue, and request for an evidentiary

11   hearing all required Plaintiff to expend many attorney hours litigating these highly

12   technical and complex issues. Federal courts have consistently held that, where "[t]he

13   government's contentious litigation strategy forced the plaintiff to respond in kind[,] [t]he

14   government cannot litigate tenaciously and then be heard to complain about the time

15   necessarily spent by the plaintiff in response." *Graham v. Sauk Prairie Police

16   Commission*, 915 F.2d 1085, 1109 (7th Cir. 1990) (citing *Riverside v. Rivera*, 477 U.S.

17   561, 580, n.11 (1986)); *see also Burgess v. Premier Corp.*, 727 F.2d 826, 841 (9th Cir.

18   1984) ("[While they] had the right to play hardball in contesting [plaintiffs'] claims, it is

19   also appropriate that [they] bear the cost of their ... strategy.").

20   Further, counsel at Hadsell Stormer staffed and litigated the case efficiently. There

21   was never more than one attorney taking or defending any deposition, and most motions

22
23   [3] Mr. Steering's firm spent approximately 179 hours related to Plaintiff's appeal of the
     order granting summary judgment. Ex. A to Steering Decl. at pp. A-9-A-13.

24   Approximately 43 hours were expended by Mr. Steering, Ex. A to Steering Decl. at pp. A-
     9-13, and 136.9 hours were expended by his associate. Ex. A to Steering Decl. at pp. A-10-

25   13. These hours are compensable. *Willis v. City of Fresno*, 680 F. App'x 589, 592-93 (9th
     Cir. 2017) (district court did not err in awarding plaintiffs fees for work on prior appeal in

26   which plaintiffs won right to pursue their claims to trial: plaintiffs were not required to
     move for fees at that time because they were not yet prevailing parties thus, any motion for

27   attorney's fees would have been premature), *cert denied*, 138 S. Ct. 220 (2017); *see also

28   Tribble v. Gardner*, 860 F.2d 321, 328 (9th Cir. 1988).

1   were drafted primarily by one attorney—generally by Mr. Olney, the most junior member

2   of Plaintiff's litigation team—with limited review and supervision by more experienced

3   counsel. Pánuco Decl. ¶ 17. The three trial attorneys divided tasks and witnesses to avoid

4   duplication of effort and time. Stormer Decl. ¶¶ 24-25. Plaintiff's trial counsel also made

5   efficient use of the court and jury's time by putting on their case in less time than the court

6   allotted. Pánuco Decl. ¶ 22.

7        Nonetheless, in order to eliminate compensation for hours that are, "excessive,

8   redundant, or otherwise unnecessary," *Gonzalez*, 729 F.3d at 1203, Plaintiff's counsel

9   have exercised billing judgment and Hadsell Stormer is agreeing to take a 5% across-

10   the-board cut to hours related to the underlying litigation. Stormer Decl. ¶ 48. *See AF*

11   *Holdings LLC v. Navasca*, No. C-12-2396 EMC, 2013 U.S. Dist. LEXIS 102249, at *15

12   (N.D. Cal., July 22, 2013); *Hernandez v. Grullense*, No. 12-CV-03257-WHO, 2014 U.S.

13   Dist. LEXIS 61020, at *51 (N.D. Cal., Apr. 30, 2014) (each approving 5% cuts).

14   Plaintiff acknowledges that counsel's time on this action—which covered work on a

15   complex civil rights case over five years that went through three law firms—necessarily

16   involved some duplication of effort as each firm had to get up to speed on the case, and

17   Plaintiff was represented by three attorneys at trial. Any such duplication was an

18   inherent part of the litigation process, however, was kept to a bare minimum, and is not a

19   basis for reducing Plaintiff's lodestar beyond the voluntary reductions identified herein.

20   *See Moreno*, 534 F.3d at 1112 ("One certainly expects some degree of duplication as an

21   inherent part of the process. There is no reason why the lawyer should perform this

22   necessary work for free.") Hadsell Stormer's 5% cut results in a deduction of

23   $60,932.98. Appendix A.

24        Plaintiff's counsel has also deleted some hours, and is not requesting any

25   compensation for time of attorneys and staff who spent less than 10 hours on the case, or

26   time for some supervisory work and conferencing. Stormer Decl. ¶ 47; Steering Decl. ¶

27   10 ( Mr. Steering attests that he did not bill for several hours of conferencing).

28   Additionally, Hadsell Stormer has eliminated 81.5 hours for the work of law clerk

---

Anabel Martinez, and has applied a 50% haircut to the hours of two law clerks—
Fernando Nuñez and Sairah Budwhani. Such time is, of course, compensable as a
general matter. *See Missouri v. Jenkins*, 491 U.S. 274, 285 (1989) (finding that § 1988
was intended to include compensation for the work of paralegals, law clerks and recent
law graduates); Declaration of Carol Sobel ("Sobel Decl.") ¶ 45 (citing cases in which
courts approved fees for law clerks). However, Plaintiff voluntarily removed the great
majority of the students' time to ensure that any entries remaining were of the type that
would be billed to paying clients of private law firms. Stormer Decl. ¶ 46.

### b.    Fee motion

It is "well-established that time spent in preparing fee applications under 42
U.S.C. § 1988 is compensable." *Gonzalez v. City of Maywood*, 729 F.3d 1196, 1210 (9th
Cir. 2013); *see also Serrano v. Unruh*, 32 Cal. 3d 621, 635 (1982). In preparation of this
fee motion, Plaintiff has spent a total of 50.5 hours by Hadsell Stormer as of February
19, 2019. Panuco Decl. ¶ 30; Stormer Decl. ¶ 49. Mr. Steering has also spent time
preparing his declaration, and locating evidence of costs expended on Ms. Zion's behalf
but is not seeking fees for this time.[4] At their current billing rates, the fees billed to date
for this fee motion are $31,912.50, for Hadsell Stormer. *See* Appendix A; Panuco Decl. ¶
30; Stormer Decl. ¶ 49.

Plaintiff's hours reflect time spent through February 20, 2019, and include time
associated with preparing this application for fees and costs. *See Gonzalez*, 729 F.3d at
1210 (It is "well-established that time spent in preparing fee applications under 42
U.S.C. § 1988 is compensable."); *Pierce v. Cty. of Orange*, 905 F. Supp. 2d 1017, 1045
(C.D. Cal. 2012) (approving $70,346.15 in attorney's fees for preparing initial and
supplemental fee application). Plaintiff will supplement her application with any
additional time expended litigating her application after February 20, 2019, and her
anticipated time for oral argument upon the filing of her reply.

---

[4] Mr. Steering may be required to spend time providing any response to Defendants'
opposition to his fees and reserves the right to request fees for that time spent in reply.

## 2.  Plaintiff's Counsel's Rates are Reasonable

"To determine a 'reasonable hourly rate'" under federal law, "the district court should consider: 'expertise, reputation, and ability of the attorney; the outcome of the results of the proceedings; the customary fees; and the novelty or the difficulty of the question presented." *Hiken v. Dep't of Defense*, Case No. 13-17073, slip op. at 14, 2016 U.S. App. LEXIS 16359 (9th Cir. Sept. 6, 2016) (quoting *Chalmers v. City of Los Angeles*, 796 F.2d 1205, 1211 (9th Cir. 1986)). The requested rates must be "in line with those prevailing in the community," which may be shown through "affidavits of the plaintiffs' attorney and other attorneys regarding prevailing fees in the community, and rate determinations in other cases." *Hiken*, slip op. at 14-15.

Here, Hadsell Stormer requests fees based on the current rates of its attorneys, Stormer Decl. ¶¶ 26-28, to account for the delay in payment. *Perdue v. Kenny A.*, 559 U.S. 542, 556 (2010) (permitting this adjustment). On the other hand Mr. Steering requests fees based on discounted rates at which he agreed to bill Ms. Zion. Steering Decl. ¶¶ 12-13, and Mr. Dunn requests fees at his last court-awarded rate of $750. Dunn Decl. ¶ 5. The reasonableness of Hadsell Stormer's requested rates is amply supported by the detailed information in the accompanying declarations concerning the expertise, reputation, and abilities of the attorneys involved in this case, and the rates obtained by comparable attorneys in the market and through judicial awards. Stormer Decl. ¶¶ 2-15, 26, 27-41; Pánuco Decl. ¶¶ 24-29; Steering Decl. ¶¶ 14-69; Exhibit 1 to Dunn Decl.; *see generally* Litt Decl.; Sobel Decl.; Hoffman Decl.; DeSimone Decl.

Further supporting the reasonableness of Hadsell Stormer's rates under federal law is the quality of the outcome achieved in this case. In the Ninth Circuit, "the complexity of legal work affects the determination of the reasonable rate" under § 1988. *Gonzalez*, 729 F.3d at 1207. This case was a complex excessive force action that "required considerable skill to litigate," *Davis v. City & Cty. of San Francisco*, 976 F.2d 1536, 1546 (9th Cir. 1992), *opinion vacated in part on unrelated grounds on denial of reh'g*, 984 F.2d 345 (9th Cir. 1993). Hadsell Stormer had to develop and present intricate

expert opinion on bullet trajectories, cause of death, timing of death, bodily injuries, and

address multiple complicated and novel questions including conduct actionable under

negligence, constitutional due process, the Fourth Amendment, application of the Bane

Act, and damages, as is made clear by the sheer number of jury notes and responses by

the court and counsel. Paul Hoffman, a renowned civil rights lawyer and recognized

authority in attorney's fees in civil rights cases, notes when opining on the

reasonableness of Mr. Stormer's rate that, "While the challenges of trying this case would

overwhelm and deter most civil attorneys, they play to Mr. Stormer's strengths as a trial

lawyer." Hoffman Decl. ¶ 17. The complexity of this case alone, and the skill with which

that was met by counsel, militates in favor of Hadsell Stormer's requested rates.

## C.   Adjustment of the Lodestar

After determining the lodestar, the court has the discretion to "adjust the fee

upward or downward, including the important factor of the 'results obtained.'" *Hensley*,

461 U.S. at 434; No downward adjustment is appropriate here; rather the extraordinary

results could very well warrant an upward adjustment to Hadsell Stormer's time,

although Plaintiff is not seeking any enhancement.

### 1.  No Downward Adjustment is Appropriate

The fact that Plaintiff did not prevail on every claim alleged in this case provides

no basis for a downward adjustment to counsel's lodestar. "Where a lawsuit consists of

related claims, a plaintiff who has won substantial relief should not have his attorney's

fee reduced simply because the district court did not adopt each contention raised."

*Hensley*, 461 U.S. at 440.

#### a.       The claims on which Plaintiff did not prevail are related to the
successful Fourth Amendment claim.

It is axiomatic that Ms. Zion is "not required to succeed on all claims against all

Defendants to demonstrate full success or excellent results." *Rodriguez*, 96 F. Supp. 3d

at 1025. The Court may "fully compensate for work that is 'expended in pursuit of the

ultimate result achieved' even where 'the plaintiff failed to prevail on every contention

raised in the lawsuit.'" *Id.* at 1024 (quoting *Hensley*, 461 U.S. at 435). Under federal law, "in a lawsuit where the plaintiff presents different claims for relief that 'involve a common core of facts' or are based on related legal theories,' the district court should not attempt to divide the request for attorney's fees on a claim-by-claim basis." *McCown v. City of Fontana*, 565 F.3d 1097, 1103 (9th Cir. 2008). The test for whether claims are factually related is "whether relief sought on the unsuccessful claim is intended to remedy a course of conduct entirely distinct and separate from the course of conduct that gave rise to the injury on which the relief granted was premised." *Id.* (quoting *Schwarz v. Secretary of Health and Human Services*, 73, F.3d 895, 903 (9th Cir. 1995). And a court should not attempt to exclude hours spent on the unsuccessful claim where it is not reasonably possible to isolate them, even where an unsuccessful claim is unrelated to the successful claims. *Hensley*, 251 U.S. at 435.

Here, the claims on which Ms. Zion did not prevail at summary judgment (*Monell*, reasonableness of the first nine gun shots, and due process challenge to all 18 gun shots), the claims she abandoned at trial (battery and intentional infliction of emotional distress) and the claims on which she did not prevail at trial (negligence, wrongful death, and Bane Act) derive from the identical course of conduct as the claim on which she did. First, on appeal, Ms. Zion did not prevail on her *Monell* claims against Orange County for failure to train and/or screen, hire and discipline. Hadsell Stormer spent *no* time on the *Monell* claims. *All* of the discovery Hadsell Stormer conducted in this case was performed years after that claim had been summarily adjudicated.

Furthermore had Plaintiff's counsel only litigated a naked Fourth Amendment claim, Hadsell Stormer would have litigated the case in the exact same way because *all* of Plaintiff's unsuccessful or abandoned claims against Deputy Higgins involved the same facts and course of conduct by Higgins as the successful Fourth Amendment claim. The constitutional claims that prior counsel conceded or lost in the Ninth Circuit (that the first nine shots were reasonable under the Fourth Amendment, and that all 18 gun shots served a legitimate law enforcement purpose under the Fourteenth Amendment)

arose from the conduct that supported the Fourth Amendment claim on which Ms. Zion (as successor in interest to Connor) prevailed. Likewise, the battery and IIED claims, that Ms. Zion abandoned at trial, and the unsuccessful Fourteenth Amendment, negligence, wrongful death, and Bane Act claims *all* required evaluating Higgins' conduct that established the successful Fourth Amendment claim. All discovery, deposition testimony, and expert opinion on the unsuccessful Fourteenth Amendment, battery, IIED, negligence, Bane Act, and wrongful death claims was equally applicable to the successful Fourth Amendment claim, and vice versa. The legal theory and standards may have been different, but the facts were the same. *See Thorne v. City of El Segundo*, 802 F.2d 1131, 1142 (9th Cir. 1986); *McCown v. City of Fontana*, 565 F.3d 1097, 1103 (9th Cir. 2008) (claims related where they all "arose from a common core of facts, namely [the plaintiff's] arrest on June 2, 2004").  The evidence adduced in discovery and presented at trial was material to all of Plaintiff's claims. "[E]vidence that was material to one claim was material to the other." *Thorne*, 802 F.2d at 1142.

Indeed, the Court noted that the jury would not have to agree on which of the three segments in the sequence of the use of force, was excessive. The Court explained that,

> If you take a step back, assumed we had a commercial transaction and the claim is you delivered three shipments of excessive goods. Breach of contract. It goes to the jury. What are damages? The jury would not have to find that the first shipment is excessive, or the second shipment is excessive as long as they found something defective. They would return a number. You wouldn't make them agree on which shipment is defective. I think it's somewhat analogous to that.

Trial Day 9 Tr. 58:2-10. Thus, Plaintiff's work on the unsuccessful claims "could have contributed to the final result achieved," *Webb v. Sloan*, 330 F.3d 1158, 1169 (9th Cir. 2003), and certainly did so here.

In any event, were this Court to find that any of the abandoned or unsuccessful claims were not related to the successful Fourth Amendment claim, it should still not

1    make any further reduction to the lodestar because the work performed on those claims

2    was deeply intertwined with the other issues in the case, and the work would have been

3    performed regardless. "Work performed in pursuit of the unrelated claims may be

4    inseparable from that performed in furtherance of the related or successful claims."

5    *Thomas v. City of Tacoma*, 410 F.3d 644 (9th Cir. 2005). Finally, any time billed for

6    unsuccessful claims that could potentially be separated from the successful claims is

7    more than adequately covered by the 5% across-the-board cut to which Hadsell Stormer

8    (who by far has the most time in the case) has self-imposed. Stormer Decl. ¶ 48.

9                          **b.    Excellent results**

10           Under federal law, a party that obtains "exceptional results" is entitled to a fully

11   compensatory fee. *Hensley*, 461 U.S. at 435. Courts analyzing this issue "should focus

12   on the significance of the overall relief obtained by the plaintiff in relation to the hours

13   reasonably expended on the litigation." *Hensley*, 461 U.S. at 435. "Success is measured

14   not only by the amount of the recovery but also in terms of the significance of the legal

15   issue on which the plaintiff prevailed and the public purpose the litigation served."

16   *Morales v. City of San Rafael*, 96 F.3d 359, 365 (9th Cir. 1996).

17           Here, Plaintiff achieved excellent results by any measure.[5] The outcome, given the

18   "undesirability" of the case also supports the reasonableness of the fees sought.

19   Recognizing that fee awards help to ensure that unattractive clients receive

20   representation by high quality counsel, courts have sometimes awarded a fee multiplier

21   in such cases. *See Rodriguez v. City of Los Angeles*, 96 F.Supp.3d 1012, 1025 (C.D. Cal.

22   2014) (awarding multiplier because "[c]ounsel faced substantial obstacles to success,

23   including representing Plaintiffs that were routinely described as the 'worst of the

24   worst'"). Though Plaintiff is not seeking this, multipliers, are appropriate in limited

25   circumstances such as the "extreme undesirability of the case" and the unwillingness of

26   other attorneys to accept it, due to the unpopularity of the Plaintiffs and the very low

27   _____

28   [5] *See* DeSimone Decl. ¶ 12 (Commenting that, "This is precisely the type of excellent
     result warranting a full award of fees.")

probability of ever prevailing on the money damages claims. *Guam Soc'y of Obstetricians & Gynecologists v. Ada*, 100 F.3d 691 (9th Cir. Guam 1996); *see also Oberfelder v. City of Petaluma*, No. C-98-1470 MHP, 2002 U.S. Dist. Lexis 8635 (N.D. Cal. Jan. 29. 2002).

The victim in this case, Connor Zion, represented one of the most stigmatized and misunderstood segments of the community – persons with mental health disabilities who have episodes of violence. It is not surprising that the jury found him comparatively at fault. (Dkt. No. 274 at p. 4). But despite the odds, Plaintiff's counsel were able to achieve significant results including a published Ninth Circuit opinion and jury verdict that will cause law enforcement agencies to shore up training of their officers on the issues raised by this case. Through over five years of sustained legal effort, Plaintiff also accomplished her mission of vindicating Connor's constitutional rights, requiring the County to pay damages for his pre-death pain and suffering. *See Sorenson v. Mink*, 239 F.3d 1140, 1147 (9th Cir. 2001) (plaintiffs' action "represents eight years of sustained legal effort to bring about a common good, namely, the improvement of the disability determination system in Oregon," and in "accomplish[ing]" that mission they achieved an "excellent result."); *Farrar*, 506 U.S. 114 (money judgment in favor of the plaintiff for any amount modified the defendant's behavior in a way that benefits the plaintiff by forcing the defendant to pay an amount that would otherwise not be paid). The Ninth Circuit opinion and Judgment against Higgins "constitute[] a warning to [the defendants] not to treat civilians unconstitutionally," *Morales*, 96 F.3d at 365.

Here, the high "level of success" obtained by the Plaintiff amply justifies the hours expended, including the time spent on claims on which Plaintiff did not prevail. *See Hensley*, 461 U.S. at 434 (stating that the "important factor of the 'results obtained'" is "particularly crucial" in cases where plaintiffs did not succeed on all of their claims); *see also Rivera v. City of Riverside*, 763 F.2d 1580 (9th Cir.1985), *aff'd on other grounds*, 477 U.S. 561 (1986) (approving the district court's refusal to reduce the attorney's fee award for limited success, despite the plaintiffs' failure to prevail against

the majority of the original defendants).

Further elevating the risk of nonpayment is the fact that Connor was highly unsympathetic. As one court explained in granting a multiplier under the far more restrictive federal standard,

> In some civil rights cases, primarily those involving . . . unattractive plaintiffs, . . . it
> is extremely difficult for the plaintiff to prevail, and virtually impossible to obtain a
> recovery large enough to support a reasonable fee. This is so regardless of the
> merits of the claim, or the skill, experience or diligence of counsel. . . . Jurors have
> no desire to believe criminals, or to reward them even if the jurors chance to believe
> their stories. . . . Often there is virtually nothing a lawyer can do through the
> application of skill, experience or time to change the jurors' preconceptions . . .

*Gomez v. Gates*, 804 F. Supp. 69, 75-76 (C.D. Cal. 1992); *see also Rodriguez*, 96 F.Supp.3d at 1025 (awarding multiplier because "Counsel faced substantial obstacles to success, including representing Plaintiffs that were routinely described as the 'worst of the worst'"). Success was highly uncertain, and counsel understood that damages would be extremely difficult to obtain given that the jury would hear the Connor had cut three persons, including a sheriff's deputy, with a knife. Stormer Decl. ¶ 19. Given the enormous challenges facing this case, including the unsympathetic nature of the case, it is unsurprising that Ms. Zion had difficulty finding and retaining counsel who would devote the time and resources it took to prevail in this case. Zion Decl.¶¶ 3-16.

### D.    Litigation Expenses and Costs

"Costs are awarded to the prevailing party in civil actions as a matter of course absent express statutory provision, 'unless the court otherwise directs.'" *Nat'l Org. for Women v. Bank of Cal., Nat'l Ass'n.*, 680 F.2d 1291, 1294 (9th Cir. 1982) (quoting Fed. R. Civ. P. 54(d)). Plaintiff is entitled to her taxable costs under Fed. R. Civ. Proc. 54(d). In addition, under § 1988, the prevailing party "may recover as part of the award of attorney's fees those out-of-pocket expenses that would normally be charged to a fee paying client." *Dang v. Cross*, 422 F.3d 800, 814 (9th Cir. 2005) (quoting *Harris v.*

*Marhoefer*, 24 F.3d 16, 19 (9th Cir.1994)). *See Pierce*, 905 F.Supp.2d at 1045.

As to her litigation expenses separately recoverable under § 1988, each law firm by which she was represented has submitted its itemization of non-taxable expenses being claimed in this litigation. Stormer Decl. ¶¶ 50-54, Ex. D; Exhibit A to Steering Decl. Plaintiff seeks costs totaling $61,938.30 for Hadsell Stormer and her necessary litigation expenditure for private investigator services. *See* Appendix A; Stormer Decl. Ex. D; Pánuco Decl. Ex.1 Plaintiff has separately filed a Bill of Costs to recover costs that are taxable under Local Rule 54-3. (Dkt. No. 304). Mr. Steering also seeks costs totaling $2,787.46—some of which are included in the Bill of Costs.

In this circuit, all of the categories of non-taxable costs sought by Plaintiff are recoverable under § 1988: parking fees, mileage, airline travel, mediation services, jury consultant services, private investigator services, fees for deposing defense experts, printing costs, electronic legal research costs, and carrier and delivery costs. *See Newman v. City of Payette*, No. 1:15-CV-00145-CWD, 2016 U.S. Dist. LEXIS 54335, 2016 WL 1611430, at *5 (D. Idaho Apr. 21, 2016) ("Airline travel, parking fees, and the cost of a mediator are, in the Court's experience, normally charged to a fee-paying client"); *Huimin Song v. Cnty. of Santa Clara*, No. 5:11-CV-04450-EJD, 2015 U.S. Dist. LEXIS 168453, 2015 WL 8770714, at *7 (N.D. Cal. Dec. 15, 2015) ("Pursuant to § 1988, however, mediation fees could be considered expenses normally charged to a fee-paying client. Thus, the court approves Plaintiffs' request for mediation fees."); *Int'l Woodworkers of Am., AFL-CIO, Local 3-98 v. Donovan*, 792 F.2d 762, 767 (9th Cir. 1985) ("costs for telephone calls, postage, air courier and attorney travel . . . are ordinarily billed to a client [and] are routine under all other fee statutes"); *Orr v. California Highway Patrol*, No. 2:14-585 WBS EFB, 2015 U.S. Dist. LEXIS 170862, 2015 WL 9305021, at *14 (E.D. Cal. Dec. 22, 2015); *Sound v. Koller*, No. 09-00409 JMS/KSC, 2010 U.S. Dist. LEXIS 49665, at *25-26 (D. Haw. May 19, 2010) (electronic legal research is recoverable under § 1988 "if such expenses are usually billed in addition to the attorney's hourly rate."); *see also Leetzow v. Metro. Life Ins. Co.,* No.

EDCV 15-2468-VAP (KKx), 2017 U.S. Dist. LEXIS 53904, at *11-12 (C.D. Cal. Mar. 3, 2017) citing *Waldo v. Consumers Energy Co.,* 726 F.3d 802, 827 (6th Cir. 2013) (holding that "requested costs for focus groups, mock trials, jury-selection services, and mediation were reasonable and necessary to provide [plaintiff] with effective representation"); *Brown v. Cascade Mgmt.*, No. 3:15-cv-01585-HZ, 2018 U.S. Dist. LEXIS 150091, at *34-35 (D. Or. Sep. 4, 2018) (fees for private investigator "recoverable as litigation expense") *Harris v. Marhoefer*, 24 F.3d 16, 19-20 (9th Cir. 1994) (fee charged by opposing expert for deposition is recoverable under § 1988).

Accordingly all of Plaintiff's requested costs must be granted.[6] This includes Hadsell Stormer's request for $61,938, Stormer Decl. Ex. D at pp.153-54, and Jerry Steering's request for $2,787.46.

## IV.    CONCLUSION

For these reasons, Plaintiff respectfully requests that this Court grant her request for reasonable fees and costs.

Dated: February 20, 2019                    Respectfully Submitted,

                                            HADSELL STORMER & RENICK LLP


                                            By:    /s/ - Cindy Pánuco
                                                   Dan Stormer
                                                   Cindy Pánuco
                                                   Brian Olney
                                            Attorneys for Plaintiff

---

[6] Plaintiff does not seek recovery of her expert witness fees of $39,541.25, Ex. D at pp.153-54, or for an independent autopsy Ms. Zion procured for $3,500 though she necessarily incurred these litigation costs. Pánuco Decl. Ex. 2.

**APPENDIX A: Description of Calculations for Attorney's Fees and Costs**

**Table 1**

| Firm | (1) Fees Incurred through 2/6/2019 | (2) Deduction: non-billed time | (3) Deduction: 5% across-the-board reduction | (4) Estimated Additional fees incurred on the fee motion through 2/20/19 | (5) Total Fees [(1) – (2) – (3) + (4)] |
|---|---|---|---|---|---|
| Hadsell Stormer | $ 1,264,912.00 | $ 46,252.5 | $ 60,932.98 | $ 31,912.5 | $ 1,189,639.02 |
| Jerry L. Steering | $ 118,755.00 | N/A | N/A | N/A | $ 118,755.00 |
| Brian Dunn | $ 5,250.00 | N/A | N/A | N/A | $ 5,250.00 |
| **Totals** | **$ 1,388,917** | **$ 46,252.5** | **$ 60,932.98** | **$ 31,912.5** | **$ 1,313,644.02** |

**Table 2**

| Firm | (6) Total Fees [copied from (5) in Table 1] | (7) Costs | Total Fees and Costs [(6) + (7)] |
|---|---|---|---|
| HSR | $ 1,189,639.02 | $ 50,119.07[1] | $ 1,239,758.09 |
| Jerry L. Steering | $ 118,755.00 | $ 2,787.46 | $ 121,542.46 |
| Brian Dunn | $ 5,250 | N/A | $ 5,250 |
| **Totals** | **$ 1,313,644.02** | __ | __ |

NOTE: Ms. Zion also personally incurred fees for the services of a private investigator for which she seeks recovery: $11,819.23. Pánuco Decl. Ex. 1.

---

[1] This sum excludes the Hadsell Stormer's costs itemized in the Bill of Costs. *See* Dkt. No. 304.